UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET W. ROBERSON,<br>      Plaintiff<br><br>v.<br><br>SHEILA C. BAIR, in her capacity<br> as Chairman, Federal Deposit<br> Insurance Corporation,<br>        Defendant | Civil Action No. 06-0282 (RWR / JMF)<br><br>**DEFENDANT'S MOTION AND<br>MEMORANDUM FOR ENTRY OF<br>PROTECTIVE ORDER<br>F.R.Civ.P. 26(c)(2)** |

MOTION

The defendant, Sheila C. Bair, by counsel, hereby moves this Court for an entry of a protective order to facilitate ongoing discovery of certain Privacy Act, privileged, and other sensitive and personal information in this case. The defendant also seeks relief from depositions plaintiff noticed for December of 2006 for the following individuals: Fred Selby, James Collins, Fred Carns, and Rick Cywinski, until such time as this Court has ruled on this Motion and other related Motions, including a Motion for Extension of the Discovery deadlines in this case, to be filed separately within the next few days.[1]  A copy of a proposed Protective Order is attached at Exhibit 1, reflecting in yellow highlight the portion of proposal about which the parties disagreed as of October 31, 2006.

It should be noted that as of November 2, 2006, the plaintiff has indicated she no longer wants any protective order in this case. Prior to November 2, the parties had operated pursuant to an unsigned confidentiality agreement, which had been negotiated but not finalized. It is primarily

---

[1] The deposition notices served November 2 state the depositions will be taken on December 14 and 17, 2006, however the current discovery schedule ends December 11, 2006. It appears from separate correspondence that the plaintiff intended the depositions for November 14 and 17, 2006. For both reasons of timing and the lack of a protective order in place, relief is being sought at this time. Defendant intends to file other motions related to these depositions shortly.

1

the plaintiff's change in position that necessitates this contested motion at this time.

Pursuant to LCvR 7(m), the parties have conferred about the subject of this motion and have failed to reach agreement, as discussed in more detail in the "Background" portion of the Memorandum.

Recognizing the sensitivity of the information the defendant seeks to maintain as confidential, the defendant is not including in this filing the specific content of the confidential information, and if necessary, asks this Court for leave to file pertinent attachments under seal for the Court's review.

The defendant accordingly requests that the plaintiff similarly avoid any public filing of specific scandalous or otherwise sensitive or privileged information about which she has alleged or received testimonial information in discovery, when responding to this motion. This includes references to the specifics of that material scattered through pages 1-32 of the plaintiff's Initial Disclosures that the FDIC contended, in discussions with plaintiff's counsel, are scandalous allegations. The Initial Disclosures are not publicly filed in this case.

The defendant, Sheila Bair, Chairman of the FDIC, respectfully asks this Court to enter a protective order to maintain as confidential certain Privacy Act, privileged, and other sensitive and personal information as described in the draft Protective Order. Defendant further asks pursuant to F.R.Civ.P. 26(c) that she be relieved from providing witnesses for depositions which are likely to go into confidential and sensitive areas, until such time as this Court has ruled on a Protective Order, and for its attorneys fees and costs in making this contested motion.

In addition to detrimental reliance on the previous agreement between the parties, the defendant relies on F.R.Civ.P. 26(c) and submits the following Memorandum with points and authorities.

MEMORANDUM OF LAW

Background

1. It is fairly routine practice in many Title VII cases for the parties to enter into a confidentiality agreement, generally in the form of a stipulated Protective Order, to facilitate discovery when privileged information, including confidential records of non-party employees, or medical treatment of the plaintiff are disclosed.  It was anticipated that this would be done in the instant case.  However, this motion is necessitated by the sudden reversal of position of the plaintiff, who on November 2, 2006, communicated through counsel that she no longer needs a Protective Order and does not intend to produce sensitive data of her own.

2. The FDIC had previously relied upon an unsigned confidentiality agreement between counsel and the plaintiff.  In order not to limit plaintiff's ability to seek discovery consistent with the Federal Rules, and recognizing that relevancy would not justify a non-response to a deposition question, counsel for the FDIC proposed a Protective Order in 2005, when this matter was in discovery before the Equal Employment Opportunity Commission. Both parties agreed to the concept of maintaining certain Privacy Act, privileged, and other sensitive and personal information concerning non-party FDIC employees as confidential, and drafts of a protective order were exchanged but not signed.  With this agreement in principle, the FDIC permitted the plaintiff to depose eleven FDIC executives between September and December of 2005 during discovery before the EEOC administrative forum.

3. During the discovery process in this case, the plaintiff introduced accusatory statements about non party employees which have gone even beyond what is stated in the complaint, and which the FDIC believes in good faith should remain confidential until such time as this Court rules that they are relevant to the case and admissible at trial.  The assertions plaintiff has made, via her representations in the Rule 26(a) disclosure, her testimony, buried within pending written discovery

3

requests, and in questions posed to FDIC executives in deposition, contain, among other things: references to closed and confidential investigative files on business matters that are irrelevant to the instant case, references to confidential and privileged documents, a pending criminal investigation of an unrelated matter, confidential and privileged FDIC materials that the plaintiff removed from the FDIC premises without authority and stored at her home in a box, and statements that are scandalous, insulting, and inappropriate, including references to the private lives of certain FDIC employees.[2]

    4.  During depositions of FDIC executives, plaintiff inquired about some of these factual issues, which previously were held by the FDIC as confidential.  Pursuant to the unsigned agreement, a copy of which is attached as Exhibit 1, the parties treated certain confidential testimony differently by placing it in a separate, sealed transcript, designated as "Confidential."  This mutual agreement is reflected in the transcriptions of those depositions during which portions were placed in "confidential" transcripts separate from the main transcript. An example can be found at page 161 of Janet Roberson's deposition, an excerpt of which is attached as Exhibit 5.

    5.  Had it not been for the unsigned agreement between counsel and the parties, the FDIC would not have permitted its executives to testify concerning privileged and confidential matters inquired about in the prior EEOC depositions.  Since plaintiff's counsel is familiar to the FDIC, having utilized protective orders in similar litigation brought by FDIC employees, FDIC counsel believed that the terms of the unsigned agreement would be honored by counsel and the plaintiff pending submission of a protective order to the appropriate judicial body.  Indeed, the unsigned

---

    [2] The relevancy of the material, per se, is not the basis for the instant motion.  Rather it is the Privacy Act issues, privileges, sensitivity, and embarrassing nature of some of the information discussed which necessitate a protective order, regardless of the relevance.  Undersigned counsel anticipates that the factual issues in this case likely will be narrowed after the close of discovery based on motions by the parties.

agreement was mentioned by counsel on the record each time a deposition entered into a "confidential" area and the court reporters were instructed to and did segregate the testimony in their transcripts.

6. When this matter was closed in the administrative forum and refiled in U.S. District Court in 2006, the parties renewed their intentions to enter into a mutually agreed protective order during the Rule 16 conference and in the Rule 16.3 Joint Statement to the Court filed May 24, 2006. *See* docket entry # 8. At page 5 of the Joint Statement, the parties indicated their plans to "submit an appropriate protective order for the court's approval."

7  Prior to the first deposition being taken in the instant proceeding, counsel for the parties renewed their discussions about the content of a protective order to protect both sensitive information already testified to and/or to be released by the FDIC and to protect sensitive medical information plaintiff expected to produce in the context of her medical damages, which she put at issue in this case. *See, e.g.*, Exhibit 2-b and 2-c, attached. The agreement was discussed again during breaks in the plaintiff's deposition on October 4, 2006, during which time confidentiality of plaintiff's anticipated medical records, a release for further medical information, and an overdue expert medical report were discussed vis-a-vis the unsigned agreement. *See*, Exhibit 2, at page 2, attached. In addition, a portion of the plaintiff's deposition taken October 4 of this year was placed in a "Confidential" binding, as her testimony related a confidential matter concerning another FDIC employee that had been placed in a sealed transcript in 2005.

The parties exchanged several more drafts of the prior unsigned protective order as recently as October 31, 2006. *See*, Exhibits 2, 2-a, 2-b, 3. Exhibit 1 to this Motion constitutes the most recent draft, reflecting areas where the parties were in disagreement as of October 31, 2006.

8. On Thursday, October 26, 2006, both counsel discussed abiding by the agreed terms of this agreement pending a resolution of the disputed portion by the Magistrate Judge. Plaintiff

Counsel, David Shapiro, said he would get back to the FDIC counsel Dina Biblin about this matter after he discussed it once again with his client, and FDIC counsel was to confirm that the FDIC could not agree to a particular paragraph. On Tuesday, October 31, 2006, FDIC counsel sent Mr. Shapiro an updated version of the agreement, noting areas of disagreement in highlight, and asked for him to consent to moving forward as a Joint Motion. *See* Exhibit 3.

      9. The disputed terminology of the draft Protective Order, at least as late as October 31, was contained in paragraph 14 concerning return of "Confidential Discovery Material" at the conclusion of the litigation. Initially, FDIC wanted all confidential information returned to the FDIC. Plaintiff's counsel refused, saying he needed it for possible disputes if any with his client post trial and appeal. The FDIC then consented to include language to permit retention of the documents for that limited purpose. When FDIC responded with a corrected draft including language to that effect, Mr. Shapiro then objected to the limitation, stating that he did not want to be precluded from using confidential discovery material obtained under the Protective Order in other cases in which he might represent another FDIC employee against the FDIC.

      For obvious reasons, the FDIC would not agree to such terms, as they would in effect permit Confidential Discovery Material to be publicized, defeating the purpose of the release of sensitive information for limited purposes in the instant litigation. *See,* Exhibit 1 at paragraph 14, page 8 - 9.

      10. Perhaps in response to the FDIC's E mail to Mr. Shapiro on October 31, (Exhibit 3), Mr. Shapiro left a voice message for FDIC counsel Dina Biblin, at 4:29 p.m. November 1, 2006, indicating that he had not been able to communicate with his client and apologized for the delay. FDIC counsel believes that Ms. Roberson was working at her FDIC office between Monday, October 30 and the afternoon of Wednesday, November 1, 2006.

      11. The morning of Thursday, November 2, 2006, FDIC counsel received faxed copies of a number of formal discovery requests from plaintiff, dated November 1, 2006, which included an

6

erroneously dated notice for deposition (for year 2004) and requests for information that would be privileged or subject to the Privacy Act, as well as information that appears to be directed to further discovery about the personal lives of certain FDIC employees who are not in the plaintiff's organization or chain of command.

12. Later during the afternoon of November 2, 2006, plaintiff's counsel faxed a separate letter to FDIC counsel (without attachments) indicating for the first time that he no longer believed a protective order was necessary, and that he did not intend to produce confidential medical information of the plaintiff, despite previous indications that would be forthcoming after a protective order was entered. Among other things, Mr. Shapiro stated that he would not be producing a Rule 26(b)(2) expert report for Dr. Natividad, whom plaintiff had identified as an expert, and whose full report with backup medical information had been due on September 25, 2006. [3] *See, e.g.*, E-mail from David Shapiro dated September 25, 2006 at 8:51 pm, at Exhibit 2-c.

13. The FDIC confirmed by letter on November 3, 2006, that the parties were in disagreement and indicated that defendant Bair would be filing a series of motions with this Court. *See* Exhibit 4.

14. For the Court's efficiency in scheduling a hearing, we note that this motion is the first of others to be filed shortly by the FDIC concerning discovery issues in this case.

\\

---

[3] A motion to compel that report dond underlying medical data, as well as other information requested by the FDIC, will be the subject of separate motions to be filed by the FDIC in the next few days.

DISCUSSION

A party is entitled to the entry of a protective order, after conference in good faith with the other party, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." F.R.Civ.P. 26(c). A protective order may issue even if the confidential information to be protected does not meet the standards of the Privacy Act, 5 U.S.C. § 552a, or the Agency's regulations promulgated thereunder, 12 C.F.R. Part 310. As the court held in Burka v. U.S. Dept. of Health & Human Services, 87 F.3d 508, 517 (D.C. Cir. 1996), "The decision to limit or deny discovery by means of a Rule 26 protective order rests on a balancing of various factors: the requestor's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material, and the harm which disclosure would cause to the party seeking to protect the information."

>As Judge Facciola noted:
>
>It is clear from experience that pretrial discovery ... has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery may also seriously implicate privacy interests of litigants and third parties. The Rules [of Civil Procedure] do not distinguish between public and private information ... There is an opportunity, therefore, for litigants to obtain-incidentally or purposefully-information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. (Citing to, Seattle Times, 467 U.S. at 34-35, 104 S.Ct. 2199).

Peskoff v. Faber, 230 F.R.D. 25, 33 (D.D.C. 2005).

The facts surrounding discovery in the instant case dictate that justice should protect both the FDIC and innocent FDIC employees from annoyance or embarrassment arising out of the scandalous assertions plaintiff is injecting into this case. *See also*, Wright, Miller & Marcus, 8 Fed. Prac. & Proc. Civ 2d § 2043.

It should be noted that the defendant is not seeking to prohibit discovery, but for the time being, simply to prevent its disclosure to the public to prevent unnecessary harm to the FDIC

through release of confidential or privileged information, including information that the plaintiff has admitted that she removed from the FDIC or "anonymously" received without authority. More importantly, the FDIC seeks to prevent harm to certain non-party individuals, some of whom have absolutely nothing to do with this case. The nature of most of the material intended to be protected contains private, privileged, or potentially embarrassing and scandalous material that the plaintiff has requested in discovery, or otherwise injected into this case. The defendant submits that discussion of these subjects, let alone allegations based on gossip and innuendo, are not only irrelevant to the factual issues pertinent to the plaintiff's claims in this matter, but are inappropriate and intended to insult and embarrass innocent employees and/or FDIC executives.[4]

The defendant recognizes that this Court has stated that in order to show cause for a protective order, the moving party must provide more than conclusory statements and articulate specific facts to support its position. <u>Peskoff v. Faber</u>, at 28. It appears that this language may be more pertinent to a motion for a protective order which seeks to prevent discovery, which is distinguishable from the present motion.

However, for the reasons previously stated, the FDIC does not want, by virtue of this motion, to put in the public view the very information it desires to maintain as confidential. By way of illustration of the type of information which has been discussed in discovery in this case, the information sought by plaintiff includes privileged and private personnel information of non-party employees, privileged

---

[4] Plaintiff's counsel, David H. Shapiro, has on a number of occasions stated to FDIC Counsel that he believes the FDIC is a criminal conspiracy, and even injected that comment into a recent deposition of his client by the FDIC. FDIC counsel Biblin had been asking a series of questions to confirm that Ms. Roberson had no experience as a director of bank regulatory or insurance functions of the FDIC. Mr. Shapiro interrupted the questioning by mocking counsel's description of the FDIC as the premier bank insurance regulator: [The following is excerpted from Janet Roberson's deposition transcript of October 4, 2006, at page 170.]:

```
2      MR. SHAPIRO:  I just never thought
3   of it that way.  I thought it was more like a
4   criminal conspiracy, myself, at the FDIC, but
5   if you say so, I was just astounded by the
6   description.
```

9

internal management investigations and/or disciplinary actions concerning non party personnel, and attorney-client privileged and other confidential information contained in files that belong to the FDIC and that plaintiff has admitted she removed without authority.[5]  Plaintiff has made hearsay allegations concerning personal relationships among FDIC employees about whom she intends to seek testimony.  Plaintiff's most recent discovery requests seek information from the personal calendars of FDIC senior executives, confidential work papers of an internal audit, merit promotion files of non-related individuals who are not similarly situated to plaintiff, internal, non public documents reflecting the bases for executive salary and bonus awards for the past five years for every FDIC executive, regardless of comparability to the plaintiff, and reports or clearances for wedding gifts allegedly given by an FDIC attorney working on this case to two married FDIC senior executives.

      The potential for abuse of confidential material, assuming it is discoverable at all, is palpable.  Peskoff v. Faber, *supra*, at 28, 33.  The FDIC has good cause to be concerned about the public release of confidential information by the plaintiff or her counsel which already was shared through testimony or may be provided through future discovery.  A prime indicator is that the plaintiff's own counsel wanted the draft Protective Order not to restrict his ability to use confidential discovery material in litigation unrelated to the instant case, for the benefit of other potential clients.[6]

      Second, plaintiff has admitted that in 2004 while she was a Deputy Director of the FDIC's Division of Finance, she created a spreadsheet of sensitive (albeit available in a different format

---

[5] Again, the legality of plaintiff's possession, or the admissibility of this information at trial is not the focus of the instant motion.

[6] In at least one deposition in the instant action, FDIC counsel observed that Mr. Shapiro was seeking information that was irrelevant to the instant case, but which might be relevant to unrelated litigation where he represents another FDIC employee.

pursuant to the Freedom of Information Act) employee salary and bonus information on her home computer and E mailed it from her home to an individual who was a union representative.[7] In her recent deposition, plaintiff admitted to removing from FDIC premises certain official and confidential files that she thought might be helpful to her EEO case, packed them in a box or boxes, and placed them in an unsecure location at her home.  She admitted that among the documents she took home was a memorandum dated September 12, 2002 from the Groome Law Group to FDIC General Counsel William Kroener concerning an FDIC Division of Finance tax matter that preceded her employment as Deputy Director of the Division, and which she knew was confidential and constituted an attorney-client communication of the FDIC.  Exhibit 5 at pages 107 - 110.

      In addition to the Groome Law Group document, Plaintiff testified that she took home other documents, and she does not know whether those documents also are confidential.  She also admitted to removing non-public internal review documents from her office and to "anonymously" receiving a copy of a non-public letter addressed to the FDIC Chairman at her home.  Her attorney quoted from that letter in phrasing a question to an FDIC senior officer during a deposition in 2005.  Neither the plaintiff nor undersigned counsel were among the few that were provided a copy of that document in the regular course of their work at the FDIC.

      In addition, the Plaintiff testified that she surreptitiously obtained information about FDIC managers and other employees by looking at their private calendar appointments through the MS Outlook computer program on the FDIC network.  Plaintiff testified that she could access calendar attachments, including Word documents and Excel spreadsheets, of certain senior executives to learn what their responsibilities were and on what subjects they held meetings, without those

---

[7] The plaintiff denies that she knew the individual to whom she provided this information was a union representative, but as an executive at the FDIC, she should have known that the individual was a member of the bargaining unit at the FDIC.

executives knowing that their Outlook files were exposed.  Exhibit 5, at pages 157 - 160.  In fact, plaintiff admitted that she even tried (unsuccessfully) to access FDIC attorney Dina L. Biblin's personal calendar. [8]

In addition to the need to maintain confidentiality of privileged, confidential, and other sensitive or scandalous information during the discovery process, the FDIC further submits that its reliance on the unsigned agreement between counsel puts it at a disadvantage and justifies the entry of a Protective Order to protect information which already is in the plaintiff's possession.  This includes "confidential" portions of transcripts from depositions given in this case over the past 14 months, which would have been subject to privilege and witnesses would have been instructed not to answer in the absence of that agreement.

The FDIC submits that plaintiff's sudden change in position vis-a-vis the protective Order has forced the FDIC to seek the Court's assistance at this time and justifies an appropriate Protective Order in this case.  This is especially of concern in that counsel for both parties were actively negotiating language for a proposed Protective Order during phone conversations and electronic mails over the past few weeks, let alone in the fall of 2005. [Exhibits 2, 2-a, 2-b, 2-c, and 3.]

## CONCLUSION

Simply on the grounds of detrimental reliance, the FDIC asks that this Court enter a

---

[8] Roberson deposition, October 4, 2006, at pp. 207 - 208:

```
                          Page 207
     21   Q   Have you ever tried to look at my
     22   personal calendar on Outlook?

                          Page 208
     1    A   Yes.
     2    Q   And what did you find out?
     3    A   You have not given permission for me
     4    to access your calendar.
```

protective order to maintain as confidential that information the FDIC has shared in depositions marked as confidential.  In addition, such an Order is requested in order to avoid publicizing Privacy Act, privileged, confidential, or otherwise sensitive and embarrassing information about individuals which the plaintiff has requested or otherwise injected into this matter through the discovery process, or which she has obtained improperly through other means.

For all of the foregoing reasons, the FDIC seeks:

(1) a Protective Order similar to the one attached as Exhibit 1, but which does not permit the plaintiff (or defendant) to retain documents designated as "confidential discovery materials" produced by its opponent, after the close of all proceedings in this matter, or to use them in unrelated litigation. (*See* Exhibit 1, paragraph 14);

(2) relief from pending notices of deposition for Fred Selby, James Collins, Rick Cywinski, and Fred Carns for December 14 and 17, 2006, until this Motion and a separate motion to be filed concerning timing of discovery are resolved, because it is anticipated that privileged, confidential, or sensitive and scandalous information will be requested in all of these depositions; and

(3) attorney fees and costs for filing this contested Motion, which was necessitated by plaintiff's abrupt and unexpected change in position, and such other and further relief as this Court may deem appropriate.

Dated: November 7, 2006                                    Respectfully submitted,

                                                           *s/ Dina L. Biblin*  _____
                                                           DINA L. BIBLIN,     DC Bar # 270298
                                                           Sr. Litigation Counsel, Legal Division
                                                           FEDERAL DEPOSIT INSURANCE CORPORATION
                                                           3501 N. Fairfax Drive (VS-D-7050)
                                                           Arlington, VA 22226
                                                           (703) 562-2372; fax: (703) 562-2477
                                                           Email: DBiblin@fdic.gov

                                                           Attorney for Defendant Sheila C. Bair

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was delivered by ECF and Electronic Mail attachment to David H. Shapiro on November 7, 2006.

*/s/ Dina L. Biblin*