# FDIC

**Federal Deposit Insurance Corporation**
3501 Fairfax Drive VS-D-7050, Arlington, VA  22226-3500

Dina L. Biblin
Sr. Litigation Counsel, Legal Division

(703) 562-2372

October 13, 2006

Mr. David H. Shapiro
Swick and Shapiro.
1225 I St. N.W. Suite 1290          Sent by Fax and E mail attachment
Washington, D.C. 20005              (202) 842-1418

Re:   *Roberson v. Bair* (D.D.C. # 06-0282 RWR-JMF)
      Discovery concerns

Dear David.

At the deposition of Ms. Roberson on October 4, 2006, you and your client failed to produce for examination or copying any of  the Initial Disclosure documents we requested earlier, with the exception of the "Frip Chissom roman a clef", which you took back with you at the end of the day before we could copy it.  As of today, nine days later, we still have not received any of the documents we requested other than those such as OIG audit reports, which we previously told you did not need to be re-copied.  We would like these produced as soon as possible, and in my absence, they can be delivered to Assistant General Counsel James Lawrence.

In addition to the Initial Disclosure documents, and despite previous requests, we have not received the following:

1.  A proper expert report pursuant to F.R.Civ.P. 26(a)(2) for Dr. Natividad, which was due on September 25, 2006.

You indicated initially there were printing problems, and then gave me a one page document on October 4, which, as we discussed, was insufficient.  If you decided to change Dr. Natividad's status to a "fact witness" only, then you need to let me know.  In any event, I will need her medical basis for her diagnosis, including the backup medical records and any other information on which she relied.

2.  A signed release from Ms. Roberson for medical records so that we can subpoena same and provide them to an expert.

I provided one at the deposition, and you indicated it would not be signed until *after* we executed an agreed Privacy Act agreement or Protective Order.   I told you at the deposition that we would treat the medical information obtained as confidential in the interim.  We will need to go to the Court to obtain an extension of time for our expert report as a result of these delays.

3.  A signed Protective Order, which I will discuss separately, below.

4.  Dates you are available for continuing discovery after your trial in early November.  (You were going to contact me the following day to provide these dates.)

The Protective Order has been an outstanding matter since last year, when I had sent you a return marked up copy of a proposed protective order for the EEOC forum. I provided an updated copy before Ms. Roberson's deposition, and you returned it to me with substantial changes. It is a positive observation that we have operated on an "honor system" since that time, verbally agreeing to maintain certain items as confidential until a proper order is in place.

At present, we appear to be in disagreement as to what should be included as "confidential," and how to treat certain "highly confidential" items. The latter refers to a limited category of items which the FDIC would like for you to maintain for the purposes of litigation in your office, and not release to Ms. Roberson without supervision. The FDIC agrees to treat as "confidential" any medical records concerning Ms. Roberson that we obtain (with the exception of the expert reports). You have refused to maintain as "confidential" certain salary and bonus data for other FDIC executives, which should not be further disseminated as a result of this litigation. Our concerns are reasonable, in that Ms. Roberson has previously released such data to another employee, who in turn distributed it broadly. Plus, Ms. Roberson admitted under oath that she removed confidential and privileged FDIC files and documents from the office to her home, and has "anonymously" received other non-public documents at her home that do not pertain to her.

In addition, your draft indicates a refusal to maintain as confidential a number of disparaging and unsupported allegations your client has made concerning other FDIC employees in the plaintiff's initial disclosures and elsewhere in the discovery. We will not execute a stipulated Protective Order without some limitations on Ms. Roberson's or your publication of these outrageous and vindictive allegations, which serve only to harm innocent people. By separate E-mail, I will forward you a revised copy of the Protective Order, incorporating a number of your stylistic changes, but highlighting what the FDIC has set forth differently.

If you cannot sign the Order substantially incorporating the terms the FDIC has set forth, I will need to bring this matter to the Magistrate for resolution. In the interim, we ask that you and Ms. Roberson refrain from continuing to broadcast the outrageous and irrelevant allegations you have been making to date about other FDIC employees, who have nothing to do with the claims being asserted by your client. This includes publication of pages 1 – 35 of the Initial Disclosures, which have not been filed with the Court, as well as certain segments of depositions marked as "confidential sessions."

In addition to the above, we would like to arrange for Ms. Roberson to submit to a F.R.Civ.P. 35 mental health examination by a psychiatrist and/or a psychologist to be retained by the FDIC concerning the medical claims she has put at issue. If you will not agree to this request, please let me know by Monday, October 23, 2006 so that I can make an appropriate motion to the Court.

Per our discussions during the October 4 deposition, I assume you continue to oppose our taking Ms. Roberson's deposition for a second day, other than to explore the Initial Disclosure documents which had not been produced for the deposition.

As I indicated to you earlier, I am unavailable to discuss these matters until the week of October 23, but feel free to respond by electronic mail or letter before then. If you have the

documents ready for delivery to us prior to my return to the office, please have them delivered to Mr. Lawrence.  They can also be left with his secretary, Monée Boswell, who sits outside Mr. Lawrence's office.

     Thank you for your attention to these matters.

           Sincerely,


           Dina Biblin

**From:** Biblin, Dina L.
**Sent:** Wednesday, October 25, 2006 1:43 PM
**To:** 'David Shapiro'
**Cc:** Lawrence, James R.
**Subject:** markup of Protective Order

David.

We seem to be having problems connecting by phone, and as I indicated in my last phone message to you a short while ago, I'm about to leave the office for several hours.  For that reason, I'm resending the E mail I sent you Oct. 13 and asking you please to mark up the attached version of P.O. indicating what you do and don't accept.  I highlighted the portions that were substantive, where I thought we might disagree.  Otherwise, I incorporated your changes from Oct. 4 for the most part.

Hopefully this will help us move forward a little faster in resolving some of the issues I addressed in my October 13 letter.



**From:** Biblin, Dina L.
**Sent:** Friday, October 13, 2006 6:16 PM
**To:** 'David Shapiro'
**Cc:** Lawrence, James R.
**Subject:** markup of Protective Order

David.
As indicated in letter sent previously today, here is a markup of the Protective Order, mostly incorporating your changes with few exceptions.

Highlighted however are the areas of substantive disagreement.  As I indicated, I'll be out of the office until Oct. 23, but if you want to try to rephrase anything to come to a meeting of the minds feel free to try.  This time, please show what you changed so it will be easier for me to respond.

Thanks.



_____
**Dina L. Biblin**
**Senior Litigation Counsel**
**FDIC Legal Division**
  **3501 N. Fairfax Drive, D-7050**
  **Arlington, VA 22226**
  **Phone:  (703) 562-2372**

**Exhibit 2-a**
**FDIC Motion for Protective Order**

**From:** Biblin, Dina L.
**Sent:** Monday, September 25, 2006 9:23 PM
**To:** 'David Shapiro'
**Subject:** Expert Witness report and other discovery matters

David.

We can work something out on the medical records -- of course we would provide copies to you of everything we receive.  And all subject to a protective order which I will send to you.  I expect that when we finally get Dr. Natividad's report, it should include all of her medical records, notes, etc. on Ms. Roberson subject to the protective Order.  Is Ms. Roberson being treated by a psychotherapist, or only an internist?

Without addressing everything in your E mail at the moment, just a few points:

1.  We can find a date to continue Mr. Selby when I've finished Ms. Roberson, and that will take more than one day.  I know you object to that and are forcing me to go to the Court, but I don't see any way it can be completed in one day.

2.  You are confusing Jim Collins with Mr. Brennan.  Mr. Collins' deposition was moved because he has a family emergency.  Mr. Brennan had no knowledge that was material to the case.  We will have to find some dates later in the fall for both Mr. Collins and Mr. Cywinski, if you wish to take their depositions.

3.  I do not know where Mr. Torrado is right now.  The last I heard is that he was out of the country.  We do not plan to call him as a witness.

4.  I'm sure Ms. Roberson can do a bit better to remember names of the key physicians that treated her previously and if not, I would expect she will authorize a disclosure of same from her insurance providers.  GWU's HMO may be out of business, but its records must be maintained somewhere, and the GWU Medical Faculty Associates have assumed a lot of the work of the prior HMO.  Still at Washington Circle in Foggy Bottom.

5.  Can I get a set of Ms. Roberson's copies of the documents she listed in her initial disclosures prior to the deposition?  (Other than those which are contained in the ROIs)  I would be happy to copy them here and return them to her within a day, if she has them here, to make this go a little more quickly.  This request includes her tape with the coach.

I will follow up with some other matters tomorrow when I have more time.

*Dina*

_____
**Dina L. Biblin**
**Senior Litigation Counsel**
**FDIC Legal Division**
 **3501 N. Fairfax Drive, D-7050**
 **Arlington, VA 22226**
 **Phone:  (703) 562-2372**

**Exhibit 2-b**
**FDIC Motion for Protective Order**

**From:**          David Shapiro [mailto:dhshapiro@swickandshapiro.com]
**Sent:**          Monday, September 25, 2006 8:51 PM
**To:**            Biblin, Dina L.
**Subject:**       Expert Witness report and other discovery matters

Dina:

I am still waiting for my client's treating physician to provide us with a report (I informed that her printer was "down" and that caused a slight delay), and will get it to you just as soon as I receive it.

For your information, however, Ms. Roberson's treating physican (and expert witness on damages) is Maria Bella Natividad, M.D., (Internal Medicine) of the Advent Health Group, P.C., 3801 Fairfax Drive, Suite 11, Arlington, VA 22203 (Tel. 703-527-0333). In addition, Ms. Roberson has also been treated these last several years by Fern L. Grapin, M.D., F.A.C.O.G. (Gynecology), of 4660 Kenmore Avenue, Suite 1100, Alexandria VA 22304-1308 (Tel. 703-370-2843). Prior to receiving treatment from these physician, Ms. Roberson obtained medical care from the G.W. Health Plan (an HMO), which apparently went out-of-business sometime ago (in 1999, I think). In any event, Ms. Roberson requested of that HMO when it was going out-of-business that her medical records be dispatched to her current medical
provider (Dr. Natividad), but it seems that this was not done. So the only medical care providers that Ms. Roberson has had in the last decade that she can now identify and that can now provide medical records are her current providers, Drs. Natividad (who was primary care at the HMO in its last days, and whom she followed to her private practice) and Grapin. Any another mediacl provider was specialist to Ms. Roberson was referred by Dr. Natividad -- who would thus have a copy of any medical record of treatement or consultation.

While I would venture a guess that Dr. Natividad will state that Ms. Roberson is suffering from anxiety and depression and that this results from the stress she has faced as a result of the mistreatment -- discrimination/retaliation -- she has been facing on the job at FDIC, and that she has been receiving treatment for these ailments (including prescription drugs) for some time now, and that such
treatment is continuing, I would prefer to wait for the doctor to speak for herself. As to her patient's prognosis, I would not presume to even guess at Dr. Natividad's views, and will be happy to read them in her report.

As regards your obtaining Ms. Roberson's medical records, we will be happy to agree on two conditions: First, we need to enter into a protective order (signed by the Court) strictly limiting dissemination of private medical information among FDIC personnel (etc.) ; second, you will have to agree to provide me an exact copy of any medical information/documentation you receive from her health care providers. Once we work these matters out in detail, Ms. Roberson will sign a waiver so that you can obtain directly her medical records.

I trust all of this is satisfactory. Naturally, if you have questions or want to discuss any of this further, just give me a call.

By the way, I have to finish Fred Selby's deposition and take the depositions from scratch of Miguel Torrado (the former HR director whom I indicated a desire to depose in the administrative phase of this disput, but who was unavailable at the time), Richard Cywinski, and James Collins -- all of whom were named in your initial disclosures. With regard to Mr. Collins, I note that while I had indicated a desire to take his deposition during the administrative process, you talked me out of it by saying he had no knowledge to contribute with regard to this case -- which is why I was so surprised to see his name in your initial disclosure document. Anyway, in light of his inclusion in your initial disclosure, I want to take his deposition. So, when can we do these depositions? And, with regard to Mr. Torrado, where is he now?

 David H. Shapiro

Swick & Shapiro, P.C.
1225 Eye Street, N.W. Suite 1290
Washington, DC  20005
Tel. (202) 842-0300; Fax (202) 842-1418

**Exhibit 2-c**
**FDIC Motion for Protective Order**

**Biblin, Dina L.**

| | |
|---|---|
| **From:** | Biblin, Dina L. |
| **Sent:** | Tuesday, October 31, 2006 4:33 PM |
| **To:** | 'David Shapiro' |
| **Subject:** | Protective Order and production of Initial Disclosure Documents |
| **Attachments:** | PO Markup 103106.wpd |

David.

I never heard back from you either Friday or Monday.  As I indicated to you last Thursday, I am unable to agree to the Protective Order without the limitation in use of the CDM documents after the conclusion of this litigation, as per our discussion last Thursday.

What I'd like to suggest, to move things forward, is that we agree to all the remaining terms of the Protective Order for the time being, so that Ms. Roberson feels comfortable signing a medical release.  (See attached)

I propose to explain this in a motion to the Magistrate, indicating that you and I have discussed it but that we have differing views of how this material is to be used outside of this litigation and ask for assistance.  It seemed from our conversation on Thursday that you were amenable to moving forward in principle -- however you wanted the FDIC to waive our reservations about use of this material in other litigation.  I cannot do that.

In the absence of production of the documents that were supposed to be produced at the deposition October 4, since I have not yet received them, I will be seeking a motion to compel.

Thank you for your attention to this matter.

*Dina*
_____
**Dina L. Biblin**
**Senior Litigation Counsel**
**FDIC Legal Division**
  3501 N. Fairfax Drive, D-7050
  Arlington, VA 22226
  Phone:  (703) 562-2372

# FDIC

**Federal Deposit Insurance Corporation**
3501 Fairfax Drive VS-D-7050, Arlington, VA  22226-3500

Dina L. Biblin
Sr. Litigation Counsel, Legal Division

(703) 562-2372

November 3, 2006

Mr. David H. Shapiro
Swick and Shapiro.
1225 I St. N.W. Suite 1290                    Sent by Fax and E mail attachment
Washington, D.C. 20005                        (202) 842-1418

Re:    *Roberson v. Bair* (D.D.C. # 06-0282 RWR-JMF)
       Discovery concerns

Dear David.

I am in receipt of your letter dated November 2, which was faxed to my office (without the documents described on page one) yesterday afternoon.  Frankly, I'm surprised by your sudden change of position on the protective order we have been negotiating.

You and I started negotiating a confidentiality agreement over a year ago, preceding discovery in the administrative forum in this case.  While we did not agree on final language, we were mutually treating certain information as confidential, subject to a final written protective order to be entered in this case, so that you could proceed with eleven depositions of FDIC executives and officers during the fall of 2005.

With that understanding, the FDIC provided information to you through deposition testimony before the EEOC that it would not have provided absent a confidentiality agreement.  In so doing, a number of the deposition transcripts reflect portions where we agreed to switch to "sealed" transcripts with different handling procedures when certain sensitive and non public matters were discussed.

When we resumed discovery this year in the federal court case, you and I exchanged revised drafts of the protective order, with changes reflecting the new forum.  In fact, you had declined to provide certain medical data from Dr. Natividad or a medical release, pending entering into such a confidentiality agreement.  Our negotiations involved not only the plaintiff's interests in privacy concerning her alleged medical condition, which she has placed at issue, but the FDIC's concerns in permitting discovery while at the same time protecting innocent employees from plaintiff's injections of gossip, innuendo, and scandal in this case.  As of last Friday, we had reached agreement save for one key phrase, and at 4:30 p.m. on November 1, you left a message that you were still unable to get in touch with your client and apologized for the delay.

Your letter of November 2 indicated that you have revisited your earlier intention to provide a release for medical data, that you will not be producing a full Rule 26(a)(2) report from Dr. Natividad, who you previously designated as an expert, and therefore you no longer see a need for a protective order.  You did, however, indicate a willingness to negotiate the confidential treatment of certain testimony or information on an item by item basis.

Unfortunately, your change of position is unacceptable to us, and we will accept your letter as your position for the purposes of LCvR 7 (m).  After spending several hours over the past five weeks or more discussing these subjects and negotiating language with you, it appears that further discussion would not be fruitful, especially because the FDIC apparently can no longer rely on your representations.

Please be advised that we plan to file appropriate motions with the Court for a protective order, including relief  from further discovery by plaintiff of confidential material in this case, including the depositions you have noticed for December of 2006 (for dates after the close of discovery) until such time as the Court has ruled on our motions.  We also will seek to compel other information to which we believe we are entitled.

In the meantime, we must insist that you and Ms. Roberson refrain from publishing, via court filing or otherwise, the information and allegations that we have discussed as privileged or sensitive, including the scandalous allegations contained in the plaintiff's Initial Disclosures.

Sincerely,
*/ signed/*
DINA L. BIBLIN

Exhibit 4, Page 2
FDIC Motion for Protective Order

Transcript of:**Janet Roberson**

**Date:** October 4, 2006
**Volume:**

**Case:** Janet Roberson v. FDIC

Neal R. Gross & Co., Inc.
Phone: 202-234-4433
Fax: 202-387-7330
Email: info@nealrgross.com
Internet: www.nealrgross.com

Exhibit 5
FDIC Motion for Protective Order

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
|-------------------------+
                          |
JANET W. ROBERSON         |
                          |
      Plaintiff           |
                          |
      v.                  |  Case No. 06-0282
                          |
SHEILA BAIR, CHAIRMAN,    |  Judge Roberts
                          |
FEDERAL DEPOSIT           |
INSURANCE CORPORATION     |
                          |
      Defendant           |
|-------------------------+
```

Wednesday,
October 4, 2006

DEPOSITION OF:

JANET W. ROBERSON

Called for examination by counsel for the

Defendant, pursuant to notice of deposition in

the headquarters of the Federal Deposit

Insurance Corporation, 3501 Fairfax Drive,

Room D7095, Arlington, Virginia, when were

present on behalf of the respective parties:

Exhibit 5
FDIC Motion for Protective Order

APPEARANCES:

        On Behalf of the Plaintiff:

                DAVID SHAPIRO, ESQ.


        of:   Swick & Shapiro, P.C.

                1225 Eye Street, N.W.

                Suite 1290

                Washington, D.C. 20005

                (202) 842-0300

                FAX 842-1418




        On Behalf of the Defendant:


                DINA L. BIBLIN, ESQ.

                Federal Deposit Insurance

                        Corporation

                3501 Fairfax Drive


                Arlington, Virginia 22201

                (703) 562-2372

Exhibit 5
FDIC Motion for Protective Order

Page 107

1    Q    So you thought this file would help

2 you to prove that you were treated less

3 favorably than men.  Is that what you think?

4    A    I believe that, yes.

5    Q    And that's why you took it home.

6    A    Yes.

7    Q    Did that file include the Groome Law

8 report?

9         MR. SHAPIRO:  Which file, Edward

10 Bolick file?

11         MS. BIBLIN:  The Edward Bolick file,

12 did that include the Groome Law report?

13         THE WITNESS:  It did not.

14         BY MS. BIBLIN:

15    Q    Did Ed Mahaney's travel files -

16 actually, there's a misprint here, tiles - but

17 including legal opinions on taxable travel, is

18 that referring to the Groome Law report?

19    A    Yes.

20    Q    And you took that home, also.

21    A    I'm not sure what you're referring

22 to when you say "that".

Exhibit 5
FDIC Motion for Protective Order

Page 108

1    Q    You took Edward Mahaney's travel

2 files, including legal opinions on taxable

3 travel, delays in changing FDIC policies to

4 comply with IRS guidelines, et cetera.  You

5 took that home.

6    A    I took some of his travel files

7 home.

8    Q    Those files that you're referring to

9 in that bullet on page 35, does that include

10 the Groome Law report?

11    A    Yes, it does.

12    Q    Okay.  Are you aware that the Groome

13 Law report is a legal opinion to the FDIC's

14 legal division from another lawyer?

15    A    Yes.

16    Q    And is it your understanding that

17 this is a confidential document?

18    A    Yes.

19    Q    Is it your understanding that it is

20 a privileged document belonging to the FDIC?

21    A    No.  I didn't - I don't really

22 understand that terminology.

Exhibit 5
FDIC Motion for Protective Order

Page 109

1      Q     Well, you understand that if you and

2 your attorney, Mr. Shapiro, have

3 conversations, that your conversations are

4 privileged.  You have what's called an

5 attorney/client privilege.  You understand

6 that concept, don't you?

7      A     Yes.

8      Q     Would you agree that the FDIC, when

9 they consult with an outside lawyer, has a

10 similar attorney/client privilege?  I realize

11 you're not a lawyer.

12      A     No, I'm not a lawyer.

13      Q     I know you're not, but you

14 understand the concept, don't you, Ms.

15 Roberson?

16      A     Yes.

17      Q     And do you understand that the

18 Groome Law report is a legal opinion solicited

19 by the legal division to assist them with

20 resolving an internal matter?

21      A     Yes.

22      Q     And that that is attorney/client

Exhibit 5
FDIC Motion for Protective Order

Page 110

1 privileged.

2      A      Yes.

3      Q      And it's not your privilege, but

4 it's the FDIC's privilege, isn't it?

5      A      Yes.

6      Q      Does an executive at the FDIC, in

7 your understanding, have a right to take

8 privileged documents of the FDIC home to use

9 for your EEO complaint?

10     A      I don't know.

11     Q      Did you make copies of the Groome

12 Law report, or any of these other documents?

13     A      No.

14     Q      Did you ever show them to other

15 people, besides your attorney?

16     A      No.

17     Q      Did you quote them to other people?

18     A      No.

19     Q      The copies that you took to your

20 house and the files that you took to your

21 house from Mr. Mahaney's travel files on these

22 issues, were they the original copies that Mr.

Exhibit 5
FDIC Motion for Protective Order

Page 157

1    Q    Then what were the notes you were

2 referring to a moment ago when you answered

3 that question?

4    A    Referring to his calendar.

5    Q    His calendar.  Did you make notes on

6 his calendar?

7    A    I made notes that I have in regard

8 to his calendar.

9    Q    Where are those notes?

10    A    At my home.

11    Q    When you go into Outlook, and you

12 look at Fred Kearns' calendar, how is it

13 you're able to access the contents of the

14 actual meetings?  How are they visible to you?

15    A    Well, I don't know if you're aware

16 of this, but when you go into Outlook, you can

17 set up a profile, and you can set up

18 permissions.

19    Q    Yes.

20    A    And, apparently, when Mr. Kearns set

21 up his calendar in Outlook, when he set the

22 permission, he set it for open view, so anyone

Exhibit 5
FDIC Motion for Protective Order

Page 158

1 who goes into his calendar can see every

2 appointment, every attachment to an

3 appointment, all the attendees to every

4 meeting he went to, the times, the places,

5 it's all there.  And that's up to an

6 individual employee to decide how to set up

7 his or her calendar in Outlook.

8      Q    Do you know what the default is for

9 that setting?

10     A    I don't know.  I would imagine - I

11 can't state this with absolute accuracy - but

12 I believe the default is that the calendar is

13 not open.  The employee has to go in and make

14 a decision about who will have access.

15     Q    Why did you select the particular

16 dates that you did between September 5th and

17 December 31st, 2005?

18     A    Because that's at a point where he

19 had gone to Corporate University on his

20 detail, and then at some point after January,

21 December - I can't remember exactly when - he

22 must have realized that his calendar was open,

Exhibit 5
FDIC Motion for Protective Order

Page 159

1 or I don't know - I can't speculate - but at

2 any rate, he changed the permissions on his

3 calendar, and it was no longer open.

4    Q    And you think that was after

5 December 31st?

6    A    Yes, January, December, somewhere in

7 there.

8    Q    Okay.  And you're saying you can't

9 answer any further questions about this

10 concerning the specifics of what you

11 downloaded without looking at it.

12    A    I just haven't looked at it for a

13 long time.

14    Q    Okay. You'd have to look at it to

15 answer those questions.  Okay.  Do you -- the

16 Outlook calendar for Mike Zamorski for

17 September 5th, 2005 through January 27th, 2006

18 - did you obtain that through the same method

19 on Outlook?

20    A    That's correct.

21    Q    And was Mr. Zamorski's calendar

22 open?

Exhibit 5
FDIC Motion for Protective Order

Page 160

1      A      Yes.

2      Q      Open permissions?

3      A      Yes.

4      Q      Was there a time in which it became

5 closed?

6      A      I believe it became closed, perhaps,

7 in February.

8      Q      And how do you know that?

9      A      Because I couldn't access it.

10     Q      So you were continuing to access it

11 --

12     A      That's correct.

13     Q      -- up until that point.

14     A      That's correct.

15     Q      Okay.  And when you did that, you're

16 saying you printed some of these out, and took

17 them home.

18     A      That's correct.

19     Q      Do you remember what dates you were

20 looking at, in particular, between September

21 5th and January 27th?

22     A      Every day.

Exhibit 5
FDIC Motion for Protective Order

1      Q    Every day.

2      A    Yes.

3           (Whereupon, the proceedings went

4  immediately into a Confidential Session.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Exhibit 5
FDIC Motion for Protective Order