**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANET W. ROBERSON**  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| **v.**  ) | **Civil Action No. 06-0282 (RWR./JMF)** |
| ) | |
| **SHEILA C. BAIR, Chairman**  ) | |
| **Federal Deposit Insurance Corporation,**  ) | |
| ) | |
| **Defendant.**  ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**
**PLAINTIFF'S EXPERT REPORT AND FOR EXTENSION OF TIME TO SERVE**
**DEFENDANT'S EXPERT REPORT OR IN THE ALTERNATIVE TO STRIKE**

**Introduction**

Janet Roberson has sued the Federal Deposit Insurance Corporation (FDIC)[1] for

discrimination and retaliation in employment.  She alleges that her employer unlawfully

discriminated against her on the basis of her sex and age, and in retaliation for engaging in

protected activity.  *See generally* Complaint.  To remedy this unlawful discrimination and

retaliation, plaintiff seeks back pay, retroactive performance bonuses, injunctive relief, attorneys'

fees and costs, and other relief.  Plaintiff also seeks compensatory damages for harms she

suffered and is suffering as a result of the FDIC's discriminatory/retaliatory conduct.  *Id.*

In her initial disclosures, plaintiff identified Dr. Maria Bella Natividad as her treating

physician.  *See* Plaintiff's Initial Disclosures at 23.  In addition, plaintiff noted that Dr. Natividad

"is likely to have discoverable information that [plaintiff] may use to support [her] claims" in the

---

[1]Actually, the named defendant is the chairwoman of the FDIC, who is being sued in her
official capacity only as the head of the FDIC.  See 5 U.S.C. §2000e-16(c).

following subject areas:  her knowledge of plaintiff's emotional distress and depression, and it

cause -- the mistreatment accorded at her work; and treatment of plaintiff for depression and

stress.**"** *Id.*   Subsequent to this initial disclosure, plaintiff's counsel has further provided FDIC's

counsel with contact information along with a general summation of the substance of Dr.

Natividad's expected testimony.  *See* Defendant's Motion to Compel Expert Report, Exh. 1 (E-

mail from David Shapiro to Dina Biblin, dated Sept. 25, 2006).  Plaintiff has not provided a

written expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B), however, because Dr. Natividad is

plaintiff's treating physician.  As such, she may testify as to her treatment of plaintiff based on

her personal observations.  Accordingly, and for the reasons stated herein, plaintiff need not

produce an expert witness report.

### <u>Argument</u>

**I.      Plaintiff Is Not Required to Produce An Expert Report for Dr. Natividad.**

Plaintiff need not produce an expert witness report for Dr. Maria Bella Natividad.  As

plaintiff's primary care physician, Dr. Natividad may testify about knowledge gained through her

treatment of plaintiff.  While some of her testimony will inevitably involve matters based on her

scientific (medical) knowledge, she has not been retained or specially employed just for this

litigation – as such, she is not subject to the extensive and time consuming requirements of Fed.

R. Civ. P. 26(a)(2)(B).

"Rule 26(a)(2) requires a party to disclose the identity of all of its expert witnesses, but

requires a written report only 'with respect to a witness who is retained or specially employed to

provide expert testimony in the case or whose duties as an employee of the party regularly

involve giving expert testimony.'" *Kirkham v. Societe Air France*, 236 F.R.D. 9, 10 (D.D.C.

2006) (*quoting* Fed. R. Civ. P. 26(a)(2)(B)); *see also Riddick v. Washington Hospital Center*, 183 F.R.D. 327, 330 (D.D.C. 1998) (confirming that only experts retained *specifically* to testify must produce a report).  Indeed, the Advisory Committee notes to Rule 26 specifically state that "[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."  Fed. R. Civ. P. 26, 1993 Advisory Committee Note.  "By and large, courts have followed the advisory committee's lead and ruled that a treating physician, testifying as to his consultation with or treatment of a patient, is not an expert witness for purposes of Rule 26."  *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) (citing a string of cases).

Rule 26(a)(2) differentiates between types of expert witnesses and provides different requirements for each.  *Sullivan v. Glock*, 175 F.R.D. 497, 500 (D. Md. 1997).  Rule 26(a)(2)(A) applies to "any witness who may provide opinion testimony at trial in accordance with Fed. R. Evid. 702, 703, and 705," while Rule 26(a)(2)(B) applies only to those experts specifically retained to testify.  *Id.*  Only the latter need provide the "far more comprehensive written and signed report."  *Id.*  This is because witnesses like treating physicians testify largely based on factual observations, as opposed to outside experts brought in to review records and prepare an opinion for litigation: "Rule 26(a)(2)(A) is colloquially said to apply to 'hybrid' fact/expert witnesses, the most frequent example being a treating physician in a personal injury case."  *Id.*

Thus, courts must first determine "whether the expert was 'retained or specially employed' in connection with the litigation."  *Kirkham*, 236 F.R.D. at 12 (*quoting* Fed. R. Civ. P. 26(a)(2)(B)).  This does not mean, however, that any compensated physician automatically becomes a "retained" expert witness.  *See id.* (stating that professional standards allow treating

physicians to be compensated for testifying).  Rather, courts should consider when the treatment

began.  *See id.* ("The Court would need to know whether the treating physician developed his

relationship with plaintiff – and his opinions – close in time to the litigation or at the request of

counsel.").   In this case, Dr. Natividad has served as plaintiff's primary care physician since at

least 1999 – that is, long before the discriminatory treatment occurred.  Plaintiff is thus seeking

only to present her personal primary care physician as a witness – not to rely on an outside

"expert" retained specifically to testify on her behalf.

Further, there is consensus that a treating physician need not provide a report when

testifying about information gained through actual treatment.  *Id.*; *see Riddick*, 183 F.R.D. at 330

(*quoting Brown v. Best Foods, A Division of CPC Int'l, Inc.*, 169 F.R.D. 385, 388 (N.D. Ala.

1996) ("So long as a treating physician 'acquired the opinions that are the subject of the

testimony directly through treatment of the plaintiff, the treating physician cannot be forced to

file a written report required by Rule 26(a)(2)(B).'") (internal citations omitted) ; *see also Garcia

v. City of Springfield Police*, 230 F.R.D. 247, 249 (D. Mass. 2005) (holding that the court will

allow the testimony of a treating physician without requiring a report when the testimony "is

based on the care-provider's personal knowledge and observations obtained during the course of

care and treatment").  Thus, in this case, Dr. Natividad can testify about what she has observed

during her actual treatment of plaintiff – indeed, she could even testify as a lay witness regarding

her personal observations.  *See Bell v. Gonzales*, No. 03-163, 2005 WL 3555490, at *13 (D.D.C.

Dec. 23, 2005) (concluding that a treating physician could testify "as a lay witness to the content

and time of her observations of plaintiff's symptoms, including any worsening of symptoms and

the dates on which those events occurred").

As the cases cited above demonstrate, courts are wary to require treating physicians to provide the detailed and time consuming expert reports required by Rule 26(a)(2)(B). Indeed, "[p]reparation of an expert report is a substantial undertaking." *Garcia*, 230 F.R.D. at 249. While courts have differed over whether a treating physician must provide an expert report when it is clear that the physician will provide an opinion "on causation, prognosis, and permanency" of injuries – *see Kirkham*, 236 F.R.D. at 11 (describing different approaches) – the majority view holds that treating physicians may testify regarding causation, prognosis, and permanency because they are often intertwined in ordinary care. *Id.* at 12, n. 3; *see Shapardon v. West Beach Estates*, 172 F.R.D. 415, 416-17 (D. Haw. 1997) ("Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B)."); *Martin v. CSX Transp., Inc.*, 215 F.R.D. 554, 557 (S.D. Ind. 2003) ("[T]o properly treat a patient, the doctor needs to understand the cause of the patient's injuries."); *McCloughan v. City of Springfield*, 208 F.R.D. 236, 242 (C.D. Ill. 2002) (following "the majority view" and allowing the physician to testify regarding "causation, prognosis, and diagnosis" without providing an expert report); *Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 175 (D. Nev. 1997) ("It is common place for a treating physician during, and as part of, the course of treatment of a patient to consider things such as the cause of the medical condition.").

Courts supporting the majority view have explained that treating physicians should be allowed to testify regarding causation and related issues without first providing an expert report

because they learn about the causes through their treatment.  Accordingly, the relevant inquiry is

not whether the physician seeks to testify about causation, but rather, how the physician

developed such an opinion:

> The relevant question is whether these treating physicians acquired their opinions
> as to the cause of the plaintiff's injuries directly through their treatment of the
> plaintiff.  If so, then they must be treated as treating physicians, who can be
> deposed under the amendments to Rule 26 but who cannot be forced to file the
> written report required by Rule 26(a)(2)(B).  As a general rule, a treating
> physician considers not just the plaintiff's diagnosis and prognosis, but also the
> cause of plaintiff's injuries.

*Salas v. U.S.*, 165 F.R.D. 31, 33 (W.D. NY 1995); *see also Baker v. Taco Bell Corp.*, 163 F.R.D.

348, 349 (D. Colo. 1995) (concluding that opinions regarding causation are a "necessary part of

the treatment of the patient").

Regarding testimony about causation, this Court's opinions favor the majority view, but

examine the facts case by case to determine the basis for the physician's opinion:

> The issue thus comes down to whether [the physician] reached her opinions about
> causation and injury directly through her treatment of [plaintiff] or whether she
> developed those opinions close in time to the litigation of this matter and in
> connection therewith or at the request of counsel.

*Riddick*, 183 F.R.D. at 330-31.  In Riddick, Judge Friedman noted, for example, that if the

physician had reviewed the records of another physician in order to render the opinion, then that

would more likely require an expert report than if the physician reviewed his own records.  *Id.* at

331.  Building on *Riddick*, Judge Bates recently listed several factors to consider when

determining whether to require an expert report for testimony regarding causation: (1) whether

the physician receives compensation for testifying; (2) the commencement of the treatment of the

plaintiff; (3) whether the physician prepared an opinion at the request of counsel or in connection

with litigation; (4) whether the physician reviewed the records of another care provider or

information provided by plaintiff's counsel during preparation of an opinion; and (6) whether the

physician's opinion is based solely on information learned from actual treatment and care of the

plaintiff. *Kirkham*, 236 F.R.D. at 13. By reviewing these factors, the court can determine

whether or not the plaintiff "retained or specially employed" the physician for litigation. *Id.*

      In contrast to Judges Friedman and Bates, Magistrate Judge Kay found (in an unpublished

opinion preceding *Kirkham*) that an expert report is required where a treating physician seeks to

testify regarding causation, as such an opinion would be derived from "scientific, technical, or

other specialized knowledge." *Anthony v. WMATA.*, No. 04-622, slip op. at 5 (D.D.C. 2005).

This holding, however, fails to consider the treating physician's unique position as a hybrid

fact/expert witness that testifies based on personal observation and professional training. *See*

*Sullivan*, 175 F.R.D. at 500-01 (citing treating physicians as the most common example of a

hybrid fact/expert witness). Moreover, Judge Kay's primary concern in Anthony was that the

"treating physician" was going to testify regarding "the appropriateness of certain medical

treatment provided to the Plaintiff prior to [the treating physician's] involvement in [that] case."

*Anthony*, No. 04-622, slip op. at 5. Judge Kay had defined the "necessary factual inquiry" to be

whether or not the treating physician based his opinions on direct treatment "or whether those

opinions were developed close in time to the litigation, at the direction of counsel, or were based

in part on reports and treatments provided by other physicians." *Id.*

      Notably, instead of accepting Judge Kay's summary conclusion that testimony regarding

causation requires an expert report, Judge Bates adopted a case-by-case approach that

incorporated Judge Kay's factual concerns into his list of determinative factors. *See Kirkham*,

236 F.R.D. at 13. The factors appropriately distinguish treating physicians who testify based on their direct treatment from "treating physicians" brought in as hired guns to review the records of others and to then prepare an opinion for trial. The requirement of a written report for the latter, but not the former, makes sense in light of what Rule 26(a)(2)(B) actually requires in the report – "a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years" (amongst other requirements). Fed. R. Civ. P. 26(a)(2)(B). When plaintiffs bring in outside experts to testify regarding things they have not learned through treatment, these requirements make sense – all parties and fact-finders have a right to know the bases for the experts' knowledge and opinions. But when treating physicians testify regarding their treatment, the bases for their opinions will be evident upon examination via deposition, interrogatories, or testimony at trial.

In this case, plaintiff merely seeks to call her primary care physician to testify regarding her direct treatment of plaintiff. Dr. Natividad has treated plaintiff since at least 1999. Thus, neither plaintiff nor her counsel brought Dr. Natividad in just for litigation. Dr. Natividad will not testify based on her review of others' records, but rather based on her own treatment notes. Plaintiff identified Dr. Natividad during her initial disclosures and plaintiff's counsel has provided additional information regarding Dr. Natividad's position, her treatment of plaintiff, and a summary of her knowledge. Defendant may depose Dr. Natividad and will, of course, be able to cross-examine her at trial.

Plaintiff, however, need not produce an expert report for her treating physician, and

defendants' arguments to the contrary are unavailing. Defendant relies primarily upon *Bell v. Gonzales*, 2005 WL 3555490, largely for the proposition "that when a treating physician crosses over into expert testimony a Rule 26(a)(2) report may be required." Def's Motion to Compel Plf's Expert Report at 9 (*citing Bell*, 2005 WL 3555490 at *12). Defendant's reading of *Bell*, however, is incorrect. In *Bell*, Judge Bates noted that the physician's testimony regarding certain subjects could not be characterized as lay witness testimony. *Bell*, 2005 WL 3555490 at *12. Accordingly, the Judge ruled that the physician could not testify as to those matters because she had not been identified as an expert witness. *Id.* He did not, as Defendant contends, state that the expert had to provide a report under 26(a)(2)(B). As noted above, a treating physician will very likely provide "expert" testimony as contemplated by Rule 26(a)(2)(A), yet the majority of courts do not require the treating physician to file a 26(a)(2)(B) expert report, even when they testify regarding causation. In *Bell*, Judge Bates only refers to a 26(a)(2)(B) report when discussing the second physician at issue – but that physician clearly constitutes an expert retained specially for litigation, as he was not brought in until three years after the incident in question. *See id.* at *17 (noting that the second doctor had only interviewed the plaintiff for one and a half hours, and had done so three years after the incident that caused the injury). Further, Judge Bates authored the later opinion in *Kirkham*, where he directly addressed the issue of when to require a treating physician to provide a 26(a)(2)(B) report – and that opinion does not support a report being required of Dr. Natividad in the instant case.

Defendant also claims that the lack of an expert report somehow prevents it from obtaining its own expert. Defendant, however, is free to depose Dr. Natividad. Defendant's additional claim that it cannot adequately prepare for such a deposition without the report is

similarly ineffectual.  As noted above, courts have routinely allowed treating physicians to testify without providing an expert report – indeed, the 1993 Advisory Committee Notes explicitly affirm this allowance: "[a] treating physician, for example, can be deposed or called to testify at trial *without any requirement for a written report*."  Fed. R. Civ. P. 26, 1993 Advisory Committee Note (emphasis added).

<u>**Conclusion**</u>

As Dr. Natividad has treated plaintiff for many years, and because she will testify regarding matters she has observed during her direct treatment, plaintiff is not required to produce an expert witness report on her behalf.  Accordingly, defendant's motion must fail in its entirety.

Respectfully submitted,


_____/S/_____
David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, D.C.  20005
Tel. (202) 842-0300
Fax (202) 842-1418
email - dhshapiro@swickandshapiro.com

Attorneys for Plaintiff

-10-

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANET W. ROBERSON** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     **Civil Action No. 06-0282 (RWR/JMF)** |
| | ) |
| **SHEILA C. BAIR,** | ) |
| **Chairman, Federal Deposit** | ) |
| **Insurance Corporation,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**ORDER**

Upon consideration of Plaintiff's Opposition to Defendant's Motion to Compel Plaintiff's

Expert Report and for Extension of Time to Serve Defendant's Expert Report or in the

Alternative to Strike, it is this _____ day of December, 2006 **ORDERED** that Defendant's

Motion is **DENIED**.

_____
The Honorable Richard W. Roberts
United States District Judge