UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANET W. ROBERSON,
       Plaintiff

v.

SHEILA C. BAIR, in her capacity
as Chairman, Federal Deposit
Insurance Corporation,
            Defendant

Civil Action No. 06-0282 (RWR / JMF)

REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S EXPERT REPORT

    Defendant's instant motion sought discovery from the plaintiff of an expert report which provides at least the underlying basis for the treating physician's anticipated testimony. *See*, first sentence of page 1 of the Motion. The case law cited by the defendant and the factual scenario leading to this motion were undisputed by the plaintiff's Opposition.

    What plaintiff argued, as anticipated, is that Dr. Natividad will testify as an expert, but in her capacity as a treating physician, thereby negating the necessity of an expert report. Plaintiff cites a host of case law, some of which predates the 2000 amendments to F.R.Civ.P. 702, to suggest that a treating physician never has to file an expert report. The applicability of that case law to the facts of this case may be slightly different than what plaintiff represents, as discussed *infra*.

    However, even assuming Dr. Natividad is testifying only as a "treating physician", the plaintiff's argument does not address the core discovery issue before this Court, which is that defendant has NOT been provided access to the underlying data for Dr. Natividad's opinion, which has been requested in various forms. This is discovery, after all, and the basis for her opinion, as a doctor, is still relevant under F.R.E. 702, and a subject ripe for discovery per F.R.Civ.P. 26(b).

1

Defendant reminds this Court that plaintiff refused to sign the medical release provided to her on October 4, 2006, until such time as a confidentiality agreement (future protective order) was executed by the parties. A month later, plaintiff refused to enter a protective order and refused to provide the medical documentation requested via a medical release.

That is why the defendant had no choice but to file the instant Motion to Compel seeking relief through either the expert report, provision of the underlying data, or in the alternative to strike Dr. Natividad as a witness.

I.   <u>Defendant was entitled to an expert report because Dr. Natividad was identified as an expert who would provide testimony as to causation.</u>

This whole issue arose because the defendant was promised an expert report. Pursuant to the Scheduling Order in this case, plaintiff identified Dr. Natividad on September 25, 2006, and told the defendant's counsel that a report would be forthcoming. *See*, Exhibit 1 to the instant Motion. Defendant reasonably understood this expert report to be that required pursuant to F.R.Civ.P. 26 (a)(2)(B) which requires a report be filed by a witness "who is retained or specially employed to provide expert testimony" in this case. After all, it is not likely a function of Dr. Natividad's ordinary treatment of plaintiff as a general physician to opine as to the cause of her alleged depression and anxiety.

When the report was hand delivered by plaintiff's counsel on October 4, 2006, undersigned counsel Biblin asked about receiving a report that meets the criteria of Rule 26(a)(2). Mr. Shapiro asked Ms. Biblin what was missing from the report and she referred him to the Rule. Later that day, Mr. Shapiro opined that Dr. Natividad may only be a treating physician, and not an expert, and that maybe a report was not required, but he would think about it. It was not until November 2, 2006 that Mr. Shapiro stated definitively that Dr. Natividad would not be providing a report because she was only a treating physician. *See* Motion at pp. 3-4.

At the same time, however, plaintiff also refused to execute a medical release, which would have enabled the defendant to obtain the data underlying the physician's opinion regardless of her status as a Rule 26(a)(2) expert.  *Id.* at 4.  The failure to obtain any documentary discovery is what prompted this Motion.  Plaintiff's Opposition, asserting that the defendant can simply take Dr. Natividad's deposition, evades the point.[1]  Plaintiff admits the doctor will testify based on her treatment notes.  *Opposition* at 8.  Why should those be a secret?

II.     <u>Defendant is entitled to the underlying data for the opinion.</u>

Defendant has a right to seek the data upon which Dr. Natividad relied before taking her deposition, in order to make the deposition operate more efficiently, and to consult with defendant's own experts in advance.  The underlying basis for Dr. Natividad's opinion is relevant to determining the evidentiary value of her opinion.  F.R.E. 702.  This is true whether it comes through Rule 26(b) discovery or under Rule 26(a)(2), which had been anticipated.

The Rule 26(a)(2) report did not require a major study or review of other scientific materials if that was not done by the physician witness.  It just has to tell the requestor what the basis for the opinion is.

The report from a treating physician in this case sufficient to meet the requirements of Rule 26(a)(2) could have been very straightforward.  The rule appears to require only a Curriculum Vitae, a statement of Dr. Natividad's charges, her history of testifying in other cases, and the underlying data she reviewed for her opinion.  The FDIC presumes that would be the medical notations she maintains on Janet W. Roberson and perhaps a reference to any medical treatise on

---

[1] At pages 9-10, plaintiff alleges one can take a deposition without an expert report, which defendant concedes, however that doesn't address the lack of any documents from the witness whatsoever in advance of the deposition.  Defendant is entitled to prepare for the deposition by performing its own research of medical knowledge after reviewing the medical notes and basis for the opinion.

which Dr. Natividad relied for a diagnosis or treatment. See F.R.Civ.P. 26(a)(2)(B).[2] Plaintiff's attorney has spent more time and energy opposing discovery of the relevant data required either by F.R.Civ.P. 26(a)(2), or by Rule 26(b), than it would have taken to copy Dr. Natividad's medical notes on Ms. Roberson which could have sufficed as the basis for her opinion.

In the absence of the expert report, the defendant requested a release for medical records, which was denied by plaintiff, even as to records from Dr. Natividad, whose testimony has been put at issue by plaintiff. The defendant is entitled to this information as relevant prior to taking a deposition of the doctor, in order to be prepared to test the reliability of the opinion. That underlying information was requested in the instant motion. Even in the post-2000 cases from other jurisdictions cited by plaintiff for the proposition that an expert report was not required, discovery was provided to the moving party in the form of medical records and ex parte access to the physicians. *See, e.g.*, Martin v. CSX Transportation, 215 F.R.D. 554, 557, n.3. [The court nevertheless opined that it is good practice to require an expert report.]; Garcia v. City of Springfield, 230 F.R.D. 247, 249 (D. Mass. 2005) [Opinion assumes that "the opposing party [will have] an opportunity to obtain written discovery regarding this potential witness, and, if necessary, to depose the witness. Prejudice arising from the lack of a report will therefore be minimal."

For the above reasons, alone, the discovery requested by the defendant in the form of an expert report, or even a release for medical records, should be granted.[3] In the absence of providing the basis for Dr. Natividad's testimony either through a medical report or a medical release enabling discovery via Rule 45 directly from Dr. Natividad, Dr. Natividad's testimony should be stricken

---

[2] Neither specific diagnosis (Diagnostic and Statistical Manual of Mental Disorders reference) nor treatment other than reference to "medications" was specified in Dr. Natividad's "report", attached as Exhibit 2 to the Motion.

[3] Defendant believed that serving Dr. Natividad with a Rule 45 subpoena would be useless without an accompanying medical release from Ms. Roberson.

III.  The proposed substance of Dr. Natividad's testimony demands an expert report or some semblance thereof.

The analysis by the plaintiff in her Opposition somewhat simplifies the case law, which is not as clear as she suggests. Whether the physician is a the treating physician is not alone determinative of whether a report has to be filed under F.R.Civ.P. 26(a)(2)(B). Rather, the court must look to the substance of the testimony to be given by that physician. If knowledge was not based solely on their observations during the course of treating an illness, or if a particular opinion was formulated only for litigation, the witness should be designated as an "expert" under the Federal Rules. Kirkham v. Societe Air France, 236 F.R.D. 9, 12 (D.D.C. 2006). In Anthony v. Washington Metropolitan Area Transit Authority, No. 04-622, slip op. at 4 (D.D.C. April 8, 2005), cited in the Opposition brief, Judge Kay stated, a factual inquiry should be made as to whether the opinions of the treating physician were "developed close in time to the litigation, at the direction of counsel, or were based in part on reports and treatments provided by other physicians." *Id.*

In Kirkham v. Societe Air France, the court made this point even clearer through expanding on the considerations to take into account when determining if a treating physician is required to file an expert report. 236 F.R.D. at 12-13, *supra*.[4] Among the factors are whether the report was requested by counsel and based upon information provided by counsel. *Id.* at 13.

Here, defendant suggests that Dr. Natividad's statement that plaintiff's depression/anxiety "will go away . . . if retaliatory actions against her cease and she can work in a more normal, professional environment" probably came from sources other than her medical observations of plaintiff.

---

[4] The factors include: receipt of compensation for time spent preparing for or providing testimony, the dates treatment of plaintiff commenced for the purpose for which she is giving testimony, whether an opinion was prepared at request of counsel or in connection with the litigation, whether she was provided information suppplied by counsel in order to prepare the opinion, and whether the opinion is based solely on information learned from actual treatment and care of tte plaintiff.

5

Nor is the fact that Dr. Natividad was previously plaintiff's physician controlling to this analysis. *Opposition* at 8 and 10. Dr. Natividad is being called to testify concerning the scope and cause of plaintiff's damages, and that the prognosis will improve when certain criteria are met. *See* Motion at 2, Par #2; at 3, Par #6, and Exhibit 2. Dr. Natividad apparently did not treat plaintiff for the symptoms that are a subject of this case until plaintiff filed her first EEO claim, in 2003, in other words, coincident with this litigation. While she may have been a treating physician prior to that time, she appears not to have been treating Ms. Roberson for this purpose, for which plaintiff has sought Dr. Natividad's opinion on damages in this case.

Plaintiff's failure to permit discovery of her medical records, notes and other related documents hinders full factual inquiry as to the scope, nature and timing of Dr. Natividad's treatment, even for making a determination of whether the report might be required under the analysis in Kirkham.

In Anthony v. WMATA, cited by plaintiff, Judge Kay stated that causation testimony of this type requires an expert report. Slip at 5.[5] Dr. Natividad is not offered merely on the subject of what she observed in treatment, but has made a statement that crosses into the area of expert testimony for which a report should be provided. *See*, discussion in Bell v. Gonzales, 2005 WL 3555490 (D.D.C. Dec.23,2005) at 11 - 15. The treating physician in Bell, Dr. Calkins, was permitted only to testify as to her observations of plaintiff's symptoms and to statements she made to plaintiff's employer, or lay-witness observations. *Id*. at 13.

Plaintiff correctly notes that the issue in Bell was not whether Dr. Calkins was required to file an expert report, but the plaintiff's failure to designate her as an expert at all. *Opposition* at 9.

---

[5] "Without an expert report, a treating physician may not testify as to issues of causation, foreseeability, prognosis or permanency. (citations omitted). That type of testimony, in contrast with testimony regarding purely 'care and treatment', . . . requires the physician to testify on opinions derived from 'scientific, technical, or other specialized knowledge,' a practice prohibited by Rule 26(a)(2)(B) without a previously filed expert report. F.R.E. 702. Anthony v. WMATA at 5.

We don't know whether a report would have been required had Dr. Calkins been identified under Rule 26(a)(2), for the purpose or presenting non-lay testimony. The point defendant is attempting to argue here is that it is precisely those non-lay opinion matters about which plaintiff proposes Dr. Natividad's testimony. Under the Anthony analysis, an expert report should be provided here.

Noting the changes to Rule 701 in 2000, Judge Bates states that a treating physician is rendering Rule 702 type "expert testimony" when opining as to "exacerbation of . . . symptoms by stress and emotional upset." Bell, at 13. [6] Dr. Natividad's opinion in this case goes even further than that to opine as to the ultimate liability for plaintiff's claims for compensatory damages, as the treatment afforded her by the FDIC. The defendant submits that her proposed testimony goes beyond her own observations and treatment and into the arena of expert testimony for which a Rule 26(a)(2) report should be provided.

In rendering his analysis, Judge Bates referred to Magistrate Judge Facciola's decision in Lightfoot v. Rosskopf, 377 F.Supp.2d 31, 33 (D.D.C. 2005). There, the Magistrate Judge opined that in the District of Columbia, in order to claim that one phenomenon was proximately caused by another requires expert testimony. Here, as in Lightfoot, the causation speaks to medical conditions, requiring specialized knowledge as contemplated under F.R.E. 702, not 701. As such, that testimony is the type for which the Rule 26(a)(2) report should be provided. At the very least, underlying data should be made available so that further determinations, consistent with Kirkham, can be made.

* * *

Based on the opposition motion and the non-responsiveness to discovery, Plaintiff appears to want to have their way in either event: Dr. Natividad can provide expert testimony without filing

---

[6] Judge Bates also dismisses certain opinions cited by the plaintiff, such as Riddick v. Washington Hosp. Ctr, 183 F.R.D. 327 (D.D.C. 1998) as preceding the new rules. *Bell v. Gonzales* at 12, n.13.

an expert report and, at the same time, plaintiff does not have to provide the defendant a release for medical records underlying that opinion in discovery. This is contrary to the Federal Rules of Civil Procedure, the Federal Rules of Evidence and case law.

In the event that this Court deems there is insufficient information before it to require an expert report, defendant seeks an order from this court directing Plaintiff to execute a medical release so that Defendant can subpoena medical records and an extension of time to depose Dr. Natividad. Defendant also seeks additional time to prepare its expert report, if one is deemed necessary after receiving discovery from Dr. Natividad.

In the alternative, Defendant moves to strike Dr. Natividad's testimony in this case.

Dated: December 14, 2006                                  Respectfully submitted,

*s/ Dina L. Biblin*_____
DINA L. BIBLIN,    DC Bar # 270298
Sr. Litigation Counsel, Legal Division
FEDERAL DEPOSIT INSURANCE CORPORATION
3501 N. Fairfax Drive (VS-D-7050)
Arlington, VA 22226
(703) 562-2372; fax: (703) 562-2477
Email: DBiblin@fdic.gov

Attorney for Defendant