UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANET W. ROBERSON,
        Plaintiff

v.

SHEILA C. BAIR, in her capacity as
Chairman, Federal Deposit Insurance
Corporation,
        Defendant

Civil Action No. 06-0282 (RWR / JMF)

REPLY in SUPPORT of DEFENDANT'S MOTION
FOR PLAINTIFF TO SUBMIT TO RULE 35 EXAMINATION
OR IN THE ALTERNATIVE TO STRIKE CLAIM FOR COMPENSATORY DAMAGES

     On December 4, the defendant moved for plaintiff to submit to a FRCvP 35 mental examination, or in the alternative to strike plaintiff's claim for compensatory damages. The reasons for the motion are, in summary, that plaintiff put her mental health at issue in this case, that she plans to have her treating physician testify and provide opinions pursuant to F.R.E. 702 as to plaintiff's diagnosis, prognosis, and causes of her alleged depression, and plaintiff thus far has resisted discovery as to her medical health (*see* pending Motion to Compel, Docket # 12). In addition, even if the medical discovery requested per the pending Motion to Compel is granted by this court, there is still good cause to order a Rule 35 examination in order to provide an opportunity for defendant's medical experts to opine as to plaintiff's condition, diagnosis, and causes. Def. Motion at 7-9. One purpose of FRCvP 35 is to "preserve the equal footing of the parties to evaluate plaintiff's mental state." Gattegno v. Price Waterhouse Coopers, 204 F.R.D. 228 (D.R.I. 2001).

     In opposition, plaintiff argued on December 18, 2006, that (1) defendant did not show good cause for the Rule 35 exam, because "other information" about plaintiff's mental health is available from Dr. Natividad, and (2) that the defendant's motion is technically defective in that it did not provide adequate notice of the scope of the examination. The plaintiff did not dispute any of the

1

case law cited by defendant in support of her motion, nor did plaintiff dispute the facts alleged in support of the Motion.

In reply, the defendant notes, first, that the standards for a Rule 35 examination are met in this case. The case law cited at pp. 6-9 of Def. Motion and the cases cited by plaintiff in fact *support* the defendant's position, holding that when the plaintiff puts her mental health in issue, a Rule 35 examination may be justified. In particular, where the plaintiff alleges specifically that the defendant's actions caused her mental and physical injuries, a Rule 35 examination is appropriate to test those allegations. Smith v. Koplan, 215 F.R.D. 11, 13 (D.D.C. 2003). There seems to be no dispute that the plaintiff has put her mental condition, especially a diagnosis of the cause of her alleged anxiety, at issue in this case. Plf. Opp. at 1-2. *See also*, Def. Motion at 2-4. Her allegations of continuing symptoms, causation by the defendant, and plans to submit both fact and physician testimony on the subject squarely justify a Rule 35 examination in this case. Schlagenhauf v. Holder, 379 U.S. 104, 117-20, 85 S.Ct. 234, 241-43, 13 L.Ed.2d 152 (1964); *see also*, cases cited at pp. 6-9 of Def. Motion. This is one of those cases where the pleadings alone would justify a Rule 35 examination. *Id.* at 119, Shepard v. American Broadcasting, and other cases cited in Smith v. Koplan, *supra*, at 13.

Without addressing any of the other cases cited by defendant, plaintiff attempts to distinguish Smith v. Koplan, stating that here, Ms. Roberson's injuries are not "self diagnosed", but will be addressed by Dr. Natividad, her treating physician. That remains to be seen, since plaintiff has refused to provide a release for medical information so that defendant can obtain her medical records from Dr. Natividad or any other medical practitioner. It is also doubtful, given Dr. Natividad's treatment of plaintiff generally as a family practitioner, that Dr. Natividad has any medical data relevant to Ms. Roberson's claimed injuries in this case other than plaintiff's own "self diagnosis."

2

Citing to Schlagenhauf and Doe v. District of Columbia, 229 F.R.D. 24 (D.D.C. 2005), the plaintiff alleges that no Rule 35 examination is justified since there is alternative information available to defendant, by deposing Dr. Natividad, plaintiff's general physician.  The problem here is twofold, in that (1) that the information of issue has not been provided to defendant, and (2), even if it were, it might be insufficient.  *Compare*, Doe, *supra*, at 27 [the examinations performed were not sufficient to ascertain the nature and extent of injuries claimed, and thus a Rule 35 mental examination was ordered by Magistrate Judge Facciola.]  Because discovery was set to close December 11, deadlines to provide medical data (September 25) had not been met by plaintiff, and releases for defendant to obtain the information independently were in fact refused, defendant had no choice but to seek a Rule 35 examination in order to ascertain Ms. Roberson's injuries for the purpose of its own defense.  In short, there was no alternative source of information.

Even assuming Dr. Natividad will provide information at some point in the future, her "report" provided no insight into the basis for her diagnosis and anticipated testimony, and is the subject of a pending Motion to compel.  [Def. Motion to Compel-Docket #12).  Because Dr. Natividad provided the "report" for the purpose of this litigation,[1]  and Mr. Shapiro's explanation of the doctor's testimony, was more elaborate than her actual statements, Dr. Natividad's underlying medical records to support her opinion are an appropriate subject of inquiry prior to taking her deposition.  F.R.Civ.P. 30(a)(2)(B).

In essence, plaintiff argues that the defendant should depose Dr. Natividad and no other medical expert to obtain information concerning plaintiff's claims for medical damages.  This is not the holding of either Schlagenhauf nor Doe v. D.C., moreover, such a statement flies in the face of

---

[1]  *See* attached Exhibit 4 at page 245.

the purpose of discovery.[2]  This suggestion deprives the defendant, and this Court, from seeking information concerning plaintiff's allegations about her own mental health from any source but the plaintiff.

This is especially of concern where mental injuries are claimed, as they are not "visible" but subjective, and plaintiff's treating physician is not a psychiatric specialist.  An independent analysis by practitioners certified in psychiatric specialties is warranted if Dr. Natividad is permitted to testify as a medical practitioner.  Plaintiff's self-serving statements to her general practitioner and to her gynecologist appear to be the basis for plaintiff's medical treatment by these doctors, who customarily treat her for physical symptoms, not psychological care.  *See* plaintiff's testimony at Exhibit 4, pp. 286-288, attached to this Reply.

To restrict defendant's discovery only to plaintiff's general practitioner is in essence no different than the plaintiff's self diagnosis in Smith v. Koplan.  For that reason, and because plaintiff bases her claims for compensatory damages on the testimony of Dr. Natividad, among others, defendant should be entitled to obtain independent analysis of the allegations.  Other medical information has not been made available, and even if it had been, an independent medical evaluation is appropriate in this case.

As to plaintiff's second point regarding adequate Notice of the Rule 35 examinations, that argument is nothing more than a technicality, in that plaintiff made it clear through her attorney that she would not submit to such an examination.  Because opposition to a Rule 35 examination was made known, the defendant did not issue a formal Notice of a Rule 35 examination; it would have been a waste of resources to have reserved time for the professionals involved without first

---

[2] Rule 35 is to be interpreted liberally to permit discovery.  Cody v. Marriott Corp., 103 F.R.D. 421 (D.Mass.1984); Eckman v. University of Rhode Island, 160 F.R.D. 431, 433 (D.R.I. 1995); Postell v. Amana, 87 F.R.D. 706 (N.D. Ga. 1980).

obtaining agreement with plaintiff, let alone without first obtaining her background medical information.[3]

Timing and location aside, defendant assumed that its request to Mr. Shapiro, that plaintiff be seen by independent psychiatric professional(s), was self-explanatory as to scope. Plaintiff's attorney never inquired who the expert(s) were that defendant wished to consult, nor what the "scope" of the examination would be before objecting to the Rule 35 exam, nor was the specificity of the exam raised as an issue during the Rule 7(m) discussions. Plaintiff objected to *all* such discovery. Defendant obviously needed first to obtain assistance from the Court to permit such discovery at all before the details could be addressed.

Nor can the "scope" of the examinations be locked down until such time as the plaintiff produces the discovery requested of her by defendant, so that the experts can assess an appropriate course of action.[4] It is presumed that Dr. Abrams would meet with plaintiff for several hours, and that Dr. Guinta would administer a series of tests, which might require two separate sessions, but that is yet to be determined. It is not uncommon for two experts to be consulted in a case which raises psychological injury such as depression and anxiety. A psychologist meets with the patient to administer psychological testing and a psychiatrist meets with and diagnoses the patient using both the information he obtains from those interviews and the testing results from the psychologist

---

[3] It is also disputable whether a formal Notice must in fact precede a Motion to the Court. Federal Rule 35(a) states an Order for a Rule 35 examination may be made only on motion for good cause shown and upon notice to the parties of the time, place, manner, conditions, and scope of the examination, etc. If a Rule 35 examination is permitted by either the party or by Order of the Court, it is presumed a formal notice would issue as to the details and the defendant would adhere to any limitations set forth by the Court.

[4] Such timing is also anticipated by the Scheduling Order, which required the plaintiff to identify and provide a report from her expert 40 days prior to defendant providing the same. The experts in this case have nothing to report upon. The defendant should be able to assess whether to utilize experts after first receiving discovery from the plaintiff and her physician(s). In order to obtain that, defendant sought relief from this Court pursuant to the pending Motion to Compel expert report or the underlying medical records of Dr. Natividad, because the "report" provided was inadequate. That issue was raised with Mr. Shapiro on October 4, 2006. *See, e.g.*, Exhibit 4 at 245, attached.

to confirm the diagnosis and causation.

Here, where plaintiff is alleging significant compensatory damages based on her alleged psychological injuries, the defendant should be permitted to explore the sufficiency of her claims by utilizing experts who are not retained by the plaintiff and who are competent to evaluate psychological illness.

\* \* \*

For the foregoing reasons, defendant's motion for an order requiring plaintiff to submit to Rule 35 mental examination(s) should be granted, or in the alternative, the plaintiff's claims for compensatory damages should be stricken from this case.

Dated: December 26, 2006              Respectfully submitted,

                                      *s/ Dina L. Biblin*

                                      DINA L. BIBLIN,    DC Bar # 270298
                                      Sr. Litigation Counsel, Legal Division
                                      FEDERAL DEPOSIT INSURANCE CORPORATION
                                      3501 N. Fairfax Drive (VS-D-7050)
                                      Arlington, VA 22226
                                      (703) 562-2372; fax: (703) 562-2477
                                      Email: DBiblin@fdic.gov

                                      Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that notice of the foregoing was provided via ECF filing to David H. Shapiro on December 26, 2006.                    *Dina L. Biblin*

# Transcript of: Janet Roberson

**Date:** October 4, 2006
**Volume:**

**Case:** Janet Roberson v. FDIC

Neal R. Gross & Co., Inc.
Phone: 202-234-4433
Fax: 202-387-7330
Email: info@nealrgross.com
Internet: www.nealrgross.com

_____
Exhibit 4
FDIC Motion for Rule 35 Exam

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|-------------------------+
                          :
JANET W. ROBERSON         :
                          :
   Plaintiff              :
                          :
   v.          : Case No. 06-0282
                          :
SHEILA BAIR, CHAIRMAN,    : Judge Roberts
FEDERAL DEPOSIT           :
INSURANCE CORPORATION     :
                          :
   Defendant              :
|-------------------------+

Wednesday,
October 4, 2006

DEPOSITION OF:

JANET W. ROBERSON

Called for examination by counsel for the

Defendant, pursuant to notice of deposition in the headquarters of the Federal Deposit Insurance Corporation, 3501 Fairfax Drive, Room D7095, Arlington, Virginia, when were present on behalf of the respective parties:

Page 2

APPEARANCES:
   On Behalf of the Plaintiff:
      DAVID SHAPIRO, ESQ.

   of: Swick & Shapiro, P.C.
       1225 Eye Street, N.W.
       Suite 1290
       Washington, D.C. 20005
       (202) 842-0300
       FAX 842-1418


   On Behalf of the Defendant:

      DINA L. BIBLIN, ESQ.
      Federal Deposit Insurance
         Corporation
      3501 Fairfax Drive

      Arlington, Virginia 22201
      (703) 562-2372

Page 3

CONTENTS

WITNESS:         DIRECT   CROSS

Janet Roberson

  By Ms. Biblin       4


EXHIBITS

NO.    DESCRIPTION              MARK

1    Plaintiff's Initial Disclosures    67

2    Roberson's SF-171                  296

Page 4

```
 1           P-R-O-C-E-E-D-I-N-G-S
 2                (9:37 a.m.)
 3        MS. BIBLIN:  Good morning.  We're
 4  here to conduct a deposition of Janet Roberson
 5  pursuant to a Notice of Deposition Deuces
 6  Tecum, which was issued in August.  The date
 7  was originally set for September 8th, I
 8  believe, and then we've reset it since that
 9  time to today.
10        Could you please state your name.
11        MS. ROBERSON:  Janet White
12  Roberson.
13        MS. BIBLIN:  And would the
14  reporter swear Ms. Roberson in.
15  WHEREUPON,
16         JANET WHITE ROBERSON
17  was called as a witness and, after having been
18  first duly sworn, was examined and testified
19  as follows:
20         DIRECT EXAMINATION
21      BY MS. BIBLIN:
22   Q  Ms. Roberson, do you still reside
```

1 because you've mentioned it's highly
2 confidential, and this is part of the open
3 record.
4          MR. SHAPIRO:  Well, you've told --
5          MS. BIBLIN:  Right.
6          MR. SHAPIRO:  This is what I got
7 from the doctor when I asked her for a report,
8 and I turned it over to you, because we're
9 supposed to turn over the report to you, so I
10 have.
11         MS. BIBLIN:  Okay.  And let the
12 record reflect that I indicated to you I don't
13 believe that this meets the criteria --
14         MR. SHAPIRO:  And we'll discuss it
15 later, as you've said.
16         MS. BIBLIN:  Right.
17         MR. SHAPIRO:  But the point is that
18 I marked it "highly confidential" because of
19 the words used in the proposed draft
20 protective order, which we've just started
21 working on.  And if the report is not
22 confidential, then I don't care if this --

Exhibit 4
FDIC Motion for Rule 35 Exam

 1     A    I think I need to go back and
 2 clarify one thing, though.
 3     Q    Sure.
 4     A    Because I kind of group everything
 5 together.  When you asked me if depression was
 6 the only symptom that I have, I think probably
 7 even more than depression, it's not so much
 8 depression, it's more anxiety.  And I don't
 9 know how different those terms are, but I
10 think in some ways the anxiety is really more
11 the issue than the depression.
12     Q    Well, in your mind, how do you
13 distinguish the anxiety from the depression?
14     A    To me, anxiety is being fearful, and
15 worrying that bad things will happen.  And
16 depression, to me, is when you just feel sad,
17 and you're not sure why you feel sad, but you
18 may not  be afraid.
19     Q    Have you discussed the distinctions
20 between these with Dr. Natividad?
21     A    No, I don't think so.
22     Q    Have you discussed the distinctions

Exhibit 4
FDIC Motion for Rule 35 Exam

 1 between these with any other medical
 2 professional?
 3      A    Dr. Grapin.
 4      Q    In what context did you discuss them
 5 with Dr. Grapin?
 6      A    Dr. Grapin has also prescribed
 7 Zoloft for me.
 8      Q    When did she prescribe Zoloft?
 9      A    I don't remember. I think maybe a
10 year or two ago.
11      Q    Why did doctor - to the extent you
12 know  - why did Dr. Grapin prescribe Zoloft if
13 you were already taking it with Dr. Natividad?
14      A    Well, my prescription was running
15 out, and I just happened to have an
16 appointment with Dr. Grapin.  And I told her
17 about my prescription running out, so she
18 prescribed it for me.
19      Q    Okay.  Has Dr. Grapin ever
20 recommended to you that you seek some sort of
21 therapy, in addition to taking the anti-
22 depressant medication?

Exhibit 4
FDIC Motion for Rule 35 Exam

 1     A    No.  I had -- I saw her yesterday,
 2 and she said that - she's known me for a long
 3 time, and she said she thinks I'm doing fine
 4 with what I have.  Taking the Zoloft seems to
 5 be evening things out for me, and I'm okay.
 6 So no, she has not recommended therapy.
 7     Q    And what about Dr. Natividad - has
 8 she, at any time, recommended any kind of
 9 psycho therapy for you, in addition to the
10 anti-depressant medication?
11     A    She has not.
12     Q    Going back to your comment about
13 depression and anxiety, fearful - have you
14 ever felt any of those symptoms prior to 2003?
15     A    Ever?
16     Q    Yes.
17     A    It's hard to go back 56 years.  I
18 would say that I've never been a depressed
19 person.  I don't think of myself as a
20 depressed person.  Anxiety, certainly, anxiety
21 before taking a big test, anxiety about
22 whether or not a promotion is going to come

Exhibit 4
FDIC Motion for Rule 35 Exam