UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET W. ROBERSON | ) |
| Plaintiff | ) ) ) ) |
| v. | ) Civil Action No. 06-0282 (TFH/JMF) |
| SHEILA C. BAIR, Chairman, Federal Deposit Insurance Corporation | ) ) ) ) ) |
| Defendant | ) ) |

**MEMORANDUM OPINION**

This case was referred to me for resolution of all discovery disputes. Currently before me are <u>Defendant's Motion and Memorandum for Entry of Protective Order</u> [#11], <u>Defendant's Motion to Compel Plaintiff's Expert Report and for Extension of Time to Serve Defendant's Expert Report or In the Alternative to Strike</u> [#12], <u>Defendant's Motion for Plaintiff to Submit to Mental Examination or in the Alternative to Strike Claim for Compensatory Damages</u> [#17], and <u>Defendant's Motion for Order Allowing Additional Time for Deposition of Plaintiff</u> [#18]. For the reasons stated below, Defendant's motion for a protective order will be granted, and Defendant's motions to compel Plaintiff's expert report, for Plaintiff to submit to mental examinations, and for additional time to depose Plaintiff will be granted in part and denied in part.

**I.      BACKGROUND**

Plaintiff Janet Roberson brings this suit against her employer, Federal Deposit Insurance Corporation ("FDIC"). Ms. Roberson, an Executive Level 2 with over twenty

years of experience in the government, is the former Deputy Director for Information Technology Management in FDIC's Division of Information Resources Management ("DIRM"). Amended Complaint ("Compl.") ¶ 6. In early 2003, Ms. Roberson was informed that a study on DIRM by the FDIC Office of the Chief Operating Officer had concluded that she was "incompetent" and that there were allegations that she had created a "hostile work environment" for several of her subordinates. Compl. ¶ 8. Plaintiff was immediately detailed to the Division of Finance ("DOF"). Compl. ¶ 9. According to Plaintiff, the investigation revealed that she had committed no ethics or equal employment opportunity violations and that there should be no disciplinary action taken against her. Compl. ¶ 13.

Plaintiff subsequently filed an administrative complaint with the FDIC alleging that she was discriminated against on the bases of sex and age when it involuntary detailed her to DOF, rejected her bonus and salary increase recommendations, and subjected her to a managerial inquiry in which she had no right to know the individuals or incidents which were the basis of the investigation. Compl. ¶¶ 10-14.

Plaintiff also claims FDIC retaliated against her for initiating the discrimination claims by leaving her at the DOF for over a year and by purposely isolating and marginalizing her while at DOF. She states that while at DOF she was placed in a non-supervisory position (although still at Executive Level rate of pay), had an office space usually assigned to lower level staff positions, was not included in the DOF Director's meetings with his executive and management staff, did not receive any assignments at the executive level, and was frequently without assignments. Compl. ¶ 9. Ms. Roberson also states she was denied a bonus while she was on the detail. Compl. ¶ 16. Ms. Roberson

was permanently transferred to a position of Deputy Director at the Division of Finance in 2004. Compl. ¶ 18.

## II.     MOTIONS

A.     <u>Defendant's Motion and Memorandum for Entry of Protective Order</u>

Defendant has moved the Court for a protective order to limit the public disclosure of sensitive and privileged FDIC information and to order the return of all FDIC documents to FDIC at the conclusion of all proceedings in this matter. <u>Defendant's Motion and Memorandum for Entry of Protective Order</u> ("Def. Mot. P.O.") at 6.

According to Defendant, during the administrative proceedings prior to filing this action, the parties operated under an unsigned confidentiality agreement under which both parties agreed not to publicly disclose any sensitive and personal information concerning non-party FDIC employees. Def. Mot. P.O. at 2.  Upon the filing of the Complaint in this Court, the parties indicated their plans to submit a protective order for the Court's approval. <u>Joint Report Pursuant to Rule 16.3</u> at 5-6.  Defendant states that the parties were unable to reach an agreement as to the provision regarding the disposition of the confidential discovery materials at the conclusion of this litigation. Def. Mot. P.O. at 6.  Plaintiff subsequently indicated she no longer believed a protective order was necessary because she did not anticipate the need to designate any material she produces as confidential. <u>Plaintiff's Opposition to Defendant's Motion and Memorandum for Entry of Protective Order</u> ("Pls. Opp. P.O.") at 1.  Both parties have adhered to the previous confidentiality agreement pending the resolution of Defendant's motion.

Defendant requests that the Court prohibit Plaintiff from publicly disclosing any confidential and privileged FDIC information. Def. Mot. P.O. at 4.  Defendant also seeks

an order prohibiting Plaintiff from using any confidential or privileged FDIC documents and information acquired in connection with this litigation in any other litigation. Id. at 13.

In her opposition, Plaintiff argues that Defendant has not met her "substantial burden" to warrant limitations on the preferred transparency of litigation. Pls. Opp. P.O. at 3; see also Nixon v. Warner Commc'n, Inc., 435 U.S. 589, 597 (1978). Any supposed presumption in favor of public access to discovery material, however, did not survive the Supreme Court's conclusion in Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984). Pretrial depositions and interrogatories, for example, which are not public components of a civil trial, were not open to the public at common law and are generally conducted in private as a matter of modern practice. Id. at 33. Indeed, the D.C. Circuit has extended this view in specifically stating that "not all documents filed with courts fall within [the common law right of access's] purview—at least, not in this circuit." United States v. El-Sayegh, 131 F.3d 158, 161 (D.C. Cir. 1997). "[W]hat makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." Id. at 163.

Thus, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information. Seattle Times, 467 U.S. at 33. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Id. Some of this information is not only irrelevant, but, if publicly released, could be damaging to the reputation and privacy of opposing and third parties. Peskoff v. Faber, 230 F.R.D. 25, 33 (D.D.C. 2005) (citing

4

Seattle Times, 467 U.S. at 34-35).  Access to discovery material therefore must be balanced against the privacy interests of civil litigants and third parties.  See id.

The D.C. Circuit has established a six-part balancing test for determining whether documents should be sealed from public access.  United States v. Hubbard, 650 F.2d 293, 317-22 (D.C. Cir. 1980); see also Willingham v. Ashcroft, 355 F. Supp. 2d 390, 391 (D.D.C. 2005); McConnell v. Fed. Election Comm'n, 251 F. Supp. 2d 919, 925 (D.D.C. 2003).  These factors are: (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced.  Johnson v. Greater Southeast Community Hospital, 951 F.2d 1268, 1277 (D.C. Cir. 1991) (citing Hubbard, 650 F.2d at 317-22).

The application of the Hubbard factors to this case mandates the issuance of a protective order.  As to the first two factors, there is nothing in the record to imply a need for public access to the documents or that the public has had previous access to the documents.  Defendant's objection is justified because the privacy interests at stake are high.  These documents reveal allegations that could cause embarrassment to the parties and non-parties if they are disseminated to the public.  The non-parties, of course, have never done or said anything that would indicate that they consent to the disclosure of such information.

Finally, it is impossible to ascertain whether all of the information produced in discovery will ever be used to support or attack the merits of Plaintiff's claims. Any public interest in the disclosure is, therefore, at its weakest at this stage of the case.

I will therefore order entry of the protective order Defendant has proposed, which includes the language in Paragraph 14 that any retained documents, following the return or destruction of all documents produced in this litigation, shall be "for the limited purpose of resolving disputes over counsel's representation or the use or dissemination of Confidential Discovery Material." Defendant shall submit to the Court in a separate filing the proposed protective order within ten days of the date of this Memorandum Opinion so that the Court may enter it.

B.   <u>Defendant's Motion to Compel Plaintiff's Expert Report and for Extension of Time to Serve Defendant's Expert Report or In the Alternative to Strike</u>

Defendant seeks an order compelling Plaintiff to produce an expert report and medical records for Dr. Maria Bella Natividad's testimony pursuant to Rule 26(a)(2)(B). In the alternative, Defendant seeks to strike Dr. Natividad's expert testimony. <u>Defendant's Motion to Compel Plaintiff's Expert Report and for Extension of Time to Serve Defendant's Expert Report or In the Alternative to Strike</u> ("Def. Mot. Comp.") at 1.

    1.   *Expert Testimony & Report*

Plaintiff originally designated Dr. Natividad, her primary physician since 1999, as a treating physician and an expert witness on Plaintiff's emotional stress and depression, its cause, treatment, and prognosis. Id. Plaintiff indicated that a Rule 26(a)(2)(B) report would be forthcoming. Def. Mot. Comp., Ex. 1 (Email from Plaintiff's Counsel dated September 26, 2006) at 1. According to Defendant, on October 4, 2006, Plaintiff produced a one-paragraph statement from Dr. Natividad stating that she was Plaintiff's

6

primary care physician and had treated Plaintiff for emotional stress and depression with medications. Def. Mot. Comp. at 3.

Plaintiff states she identified Dr. Natividad as her treating physician and provided Defendant with contact information along with a general summation of the substance of her expected testimony. Plaintiff's Opposition to Defendant's Motion to Compel Plaintiff's Expert Report ("Pls. Opp. Comp.") at 2. Plaintiff asserts Dr. Natividad is expected to testify as to her treatment of Plaintiff based on her personal observations and, therefore, no expert report is necessary. Id. at 1-2.

Under Rule 26(a)(2)(B), a witness who has been "retained or specially employed to provide expert testimony in the case" must submit a written report. Fed. R. Civ. P. 26(a)(2). The report must set forth a statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; the witness's qualifications; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Id.

The applicability of the Rule 26 expert report requirement to treating physicians is unclear, in part because the testimony of treating physicians can include matters that cross over into classic expert testimony, mainly causation and predictions about the permanency of a plaintiff's injuries. See Kirkham v. Société Air France, 236 F.R.D. 9, 10-11 (D.D.C. 2006). At the same time, there is a general consensus that a physician may testify as to her personal observations, diagnosis, and treatment of plaintiff without having filed an expert report. Id.

7

As Judge Bates recently explained:

> Although the language of the rule and advisory committee notes would, at first glance, appear straightforward, the applicability of the written report requirement to treating physicians who provide expert testimony is unclear because, in practice, the testimony of treating physicians often departs from its traditional scope--the physician's personal observations, diagnosis, and treatment of a plaintiff--and addresses causation and predictions about the permanency of a plaintiff's injuries, matters that cross over into classic expert testimony. See Sowell v. Burlington Northern & Santa Fe Rwy. Co., 2004 WL 2812090, *2-*3 (N.D. Ill. 2004). Thus, there are widely divergent views within the federal courts on whether a treating physician providing expert testimony is required to provide an expert report in advance of testifying under Rule 26(a)(2)(B). See Garcia v. City of Springfield Police Dep't, 230 F.R.D. 247, 247-49 (D. Mass. 2005) (collecting cases, and concluding that requirement of expert report depends on whether treating physician is specially retained in connection with litigation and whether testimony is based on personal observations from providing care and treatment); Sowell, 2004 WL 2812090, at *2-*3 (collecting cases, and concluding that expert report is always required where treating physician testimony includes opinions on "causation, permanency, and prognosis"); McCloughan v. City of Springfield, 208 F.R.D. 236, 241-42 (C.D. Ill. 2002) (collecting cases, and concluding that expert report is not required where treating physician offers testimony on "causation, diagnosis, and prognosis"); see also Anthony v. Washington Metro. Area Transit Auth., No. 04-622, slip op. at 5 (D.D.C. Apr. 8, 2005) ("without an expert report, a treating physician may not testify as to issues of causation, foreseeability, prognosis, and permanency") (Kay, M.J.).

Id. at 11.

While the parties struggle with whether Dr. Natividad must produce a report as a condition of testifying as to any opinion she may articulate for the jury, their struggle is, in my view, premature. No one is contesting that her deposition may be taken and that during it she may be asked what opinion (if any) she intends to give and the basis for it.

Moreover, I know of no reason why Plaintiff can resist providing the required medical release so that Defendant's counsel can examine whatever file Dr. Natividad has accumulated as to Plaintiff before the deposition.  Thus, since all the traditional discovery devices are available, regardless of whether or not Dr. Natividad provides the report[1] required by Rule 26(a)(2), Defendant's counsel, by taking Dr. Natividad's deposition, will learn about her treatment of Plaintiff, her treatment history, and her diagnosis or prognosis.  Defendant's counsel can then make specific inquiry of what, if any, opinion Dr. Natividad intends to offer in this case.  If she does intend to offer one based on her medical training and skill, Defendant can certainly inquire as to all the topics described in Rule 26(a)(2) that I enumerated above.  Since they are listed as required disclosures in the Rule itself, I cannot understand how anyone could argue that they are not legitimate subjects of inquiry.

If the deposition is conducted correctly, the Court will be provided with the best possible information as to whether the proponent of the witness failed to comply with Rule 26(a)(2) because, despite her characterization, the witness was, in the language of the Rule, "retained or specially employed to provide expert testimony in the case."  The Court then can address what sanctions should be imposed upon the proponent of the witness for that failing.  If, on the other hand, the deposition establishes that the witness was not "retained or specially employed to provide expert testimony in the case," there has been no violation of the Rule and no cause for judicial concern or action.

---

[1] See Paul W. Grimm, Charles S. Fax & Paul Mark Sandler, Discovery Problems and Their Solutions 183 (2005) ("Counsel should always remember that Rule 26(a)(2) pertains to the required pretrial disclosure of expert information only, and does not preclude discovery of expert opinions by other discovery methods such as interrogatories, document requests, or depositions.").

It could be argued that relieving a party of complying with Rule 26(a)(2) in a case where it is not clear whether or not the Rule applies to the witness offends the purpose of that Rule. But, that begs the question of whether the Rule applies to the witness in the first place. A party confronted with an assertion that the witness is not subject to that Rule because, for example, the witness is a treating physician who nevertheless fears with justification that the witness will provide expert testimony, can either litigate whether the witness is subject to the Rule or take the witness's deposition and decide for herself. If the party chooses to litigate the question by a motion to compel, then, as Judge Bates has indicated, the court may have to make a series of related inquiries to establish whether the witness is subject to Rule 26(a)(2). Kirkham, 236 F.R.D. at 13. But, if the party decides to take the deposition, then, as I have just explained, the problem is resolved without need for judicial action.

A fair criticism of that result would be that a party should not be forced to take a deposition to establish whether or not a witness is subject to the Rule. That is a just criticism because one purpose of the Rule is to provide opposing counsel with sufficient information to decide whether or not to take the deposition of the witness, which can be a very expensive proposition. Rule 26 advisory committee's note (1993). But, if counsel has decided to take the deposition, that criticism is academic.

In this case, Defendant may take Dr. Natividad's deposition and, after it is taken, the Defendant may, if it sees fit, seek relief to claim that Plaintiff has not complied with Rule 26(a)(2).[2]

---

[2] Defendant also requested the Court, if granting the request for an expert report, allow Defendant thirty days following production to consult with an expert and submit its own expert report. Def. Mot. Comp. at 12. As the Court did not grant the request for an expert report from Dr. Natividad, the Court need not grant Defendant's request for time to submit an additional expert report.

2.    *Medical Records*

Defendant states that Plaintiff previously agreed to sign authorizations for release of her medical information. Def. Mot. Comp., Ex. 1 (Email from Plaintiff's Counsel dated September 26, 2006) at 1.  Defendant states Plaintiff subsequently refused to produce a copy of her medical records or sign an authorization for release of the medical information. Def. Mot. Comp. at 4.  Defendant requests an order compelling Plaintiff to produce the medical records or sign an authorization for release of medical information. Id.  Plaintiff does not address the issue of her medical records in her opposition.

A defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to a plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so. Moore v. Chertoff, No. 00-953, 2006 WL 1442447, at *2 (D.D.C. May 22, 2006).  The party resisting disclosure bears the burden of "demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Id. (quoting Merrill v. Waffle House, Inc., 227 F.R.D. 467, 470-71 (N.D. Tex. 2005)).

Plaintiff has not met her burden of demonstrating that the medical records are not relevant or that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  In fact, she did not address the issue whatsoever in response to Defendant's motion.  Therefore, Plaintiff is ordered to produce all medical records in her possession that include references to her mental health

11

treatment and to sign the authorizations for release of medical information for Defendant to obtain a copy of all such records from relevant medical providers.

C. <u>Defendant's Motion for Plaintiff to Submit to Mental Examination or in the Alternative to Strike Claim for Compensatory Damages</u>

Defendant moves to compel Plaintiff to submit to two independent medical examinations ("IME"), one by a licensed forensic psychiatrist and another by a licensed psychotherapist, who were both retained as experts by Defendant. <u>Defendant's Motion for Plaintiff to Submit to Mental Examination (FRCvP35) or in the alternative to Strike Claim for Compensatory Damages</u> ("Def. Mot. IME") at 1. Defendant argues that Plaintiff has placed her mental condition in controversy, that there exists good cause for such examinations, and Plaintiff has refused to provide necessary information by any other means. Def. Mot. IME at 3. In opposition, Plaintiff argues that Defendant has not shown good cause for compelling an IME because there are less intrusive means to discover the information it seeks. <u>Plaintiff's Opposition to Defendant's Motion for Plaintiff to Submit to Mental Examination (FRCvP35) or in the alternative to Strike Claim for Compensatory Damages</u> ("Pls. Opp. IME") at 2-3.

When moving for an IME under Rule 35 of the Federal Rules of Civil Procedure, the movant must establish that the "mental or physical condition . . . is in controversy" and that there is "good cause" for the motion to be granted and for the party to be submitted for an IME. Fed. R. Civ. P. 35(a).

Plaintiff seeks $300,000 in compensatory damages and her Amended Complaint alleges that she "has suffered and continues to suffer emotional distress and personal and professional humiliation and embarrassment which, inter alia, has severely diminished her enjoyment of life and caused her other pain and suffering." Compl. ¶ 27.

12

In her initial disclosures, Plaintiff claimed (inter alia) that her compensatory damages should compensate her for irreparable damage to her reputation and career and for "depression, requiring medication." Def. Mot. IME at 3 (quoting Plaintiff's Initial Disclosures at 38-39). She also stated that Dr. Natividad would testify concerning "plaintiff's emotional stress and depression and it [sic] cause—the mistreatment accorded [her] at her work; and treatment of plaintiff for depression and stress." Id. (quoting Plaintiff's Initial Disclosures at 23).

In an email dated September 25, 2006, Plaintiff's counsel, indicating that he preferred Dr. Natividad to speak for herself at her deposition, nevertheless said that he would venture the guess that "Dr. Natividad will state that Ms. Roberson is suffering from anxiety and depression and that this results from the stress she has faced as a result of the mistreatment—discrimination/retaliation—she has been facing on the job at FDIC, and that she has been receiving treatment for these ailments (including prescription drugs) for some time now . . . ." Def. Mot. IME, Ex. 2. Finally, at her deposition, Plaintiff stated that she believes she is being treated for depression and has been taking the prescription drug Zoloft for several years, prescribed to her by Dr. Natividad and by her gynecologist. Def. Mot. IME at 2.

Understandably, Plaintiff does not contest that her mental condition is in controversy. Pls. Opp. IME at 4-5. She unquestionably claims that she is suffering from two identifiable forms of mental illness or disorder and that those conditions were caused by Defendant. Additionally, she will most probably produce a physician who will opine that her abnormal mental conditions or disorders were caused by her treatment at the hands of Defendant. Surely, her specific claims of suffering identified mental disorders

13

because of Defendant's actions, to be supported by a physician who will qualify to provide expert testimony in accordance with Rule 702 of the Federal Rules of Evidence, places her mental condition in controversy, justifying the examination Defendant seeks. Benham v. Rice, 238 F.R.D. 15, 28 (D.D.C. 2006); Doe v. District of Columbia, 229 F.R.D. 24, 26-27 (D.D.C. 2005); Smith v. Koplan, 215 F.R.D. 11, 13 (D.D.C. 2003).

Plaintiff nevertheless asserts that the Court should not order the IMEs because Defendant can obtain the information it seeks through a deposition of Plaintiff's treating physician, Dr. Natividad. Pls. Opp. IME. at 4. While deposing Dr. Natividad would provide Defendant with some of the mental health information it seeks from Plaintiff, it cannot possibly provide Defendant with the information it needs to challenge and rebut Plaintiff's claim, supported by Dr. Natividad's testimony, that Plaintiff is suffering from mental disorders caused by Defendant's actions. Defendant has the right to challenge Plaintiff's claim that she was harmed and that Defendant was the source of that harm, and to secure from whatever source available information that will challenge that claim. As I stated in Benham:

> Without the information obtained through a court-ordered IME, defendant would have no means to rebut plaintiff's claims. I cannot fairly deprive defendant of the opportunity to examine plaintiff's claims of emotional distress from a scientific vantage point. In other words, defendant has the right to challenge plaintiff's claim that she was harmed and that defendant was the source of that harm. To preclude defendant from being able to mount its defense in this manner would be to allow plaintiff to unilaterally determine which evidence will and which evidence will not be admissible. The defendant is no more bound by plaintiff's articulation of the issues in this case at it would be in any other case.

Benham, 238 F.R.D. at 28-29.

Furthermore, Plaintiff points out that Defendant failed to specify the manner, conditions, and scope of the proposed examinations, or even why two examinations were necessary. Pls. Opp. IME at 5. Defendant states it wanted to obtain the Court's permission prior to scheduling the examination since Plaintiff resisted any Rule 35 exam whatsoever. <u>Reply in Support of Defendant's Motion for Plaintiff to Submit to Rule 35 Examination or in the Alternative to Strike Claim for Compensatory Damages</u> at 4-5. Now that I have permitted such an examination, Plaintiff is ordered to comply with Rule 35(a) and issue the notice required by that Rule.

D.  <u>Defendant's Motion for Order Allowing Additional Time for Deposition of Plaintiff</u>

Defendant seeks an order allowing it to depose Plaintiff for two additional seven-hour days. <u>Defendant's Motion for Order Allowing Additional Time for Deposition of Plaintiff</u> ("Def. Mot. Time") at 1. Defendant contends that the one seven-hour day it took to depose Plaintiff was insufficient to explore the basis of Plaintiff's allegations and evaluate the proof she intends to offer at trial. <u>Id.</u> at 2-3.

Plaintiff claims Defendant has already deposed Plaintiff to the fullest extent, with six hours and fifty minutes on the record, producing a transcript that is over 400 pages in length. <u>Plaintiff's Opposition to Defendant's Motion for Order Allowing Additional Time for Deposition of Plaintiff</u> ("Pls. Opp. Time") at 2. Moreover, Plaintiff states Defendant has had ample opportunity to explore the basis of Plaintiff's allegations through other forms of discovery, both at the administrative level and before this Court, and that Defendant should not be permitted additional time to simply ask more questions. <u>Id.</u>

In 2000, a seven-hour limit for a deposition was set, but the court is required to permit more time "consistent with Rule 26(b)(2) if needed for a fair examination of the

15

deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." Fed. R. Civ. P. 30(d)(2). The reference to "Rule 26(b)(2)" requires the court to limit the use of any discovery method if (1) the discovery is unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, or less burdensome or less expensive; (3) the party has had ample opportunity to obtain the information sought; or (4) the burden or expense of the proposed discovery outweighs its unlikely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2).

In weighing these factors, and applying them to whether a deposition should be longer than seven hours, the court should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit should be the exception, not the rule. Automatic extensions eviscerate the rule. Moreover, the seven-hour limit encourages efficiency; it has been said that a writer's best friends are a deadline and a page limitation. The same may be said of lawyers conducting depositions.

Plaintiff concedes that Defendant is entitled to additional deposition time to discuss the documents that she failed to produce as requested, Pls. Opp. Time at 5, so the only question is how much time to permit for it. In making that determination, I have to begin with the crucial importance of Plaintiff's deposition to the issues in this case and the detailed nature of the factual allegations in the Complaint that, in my view, justify an equally detailed exploration of the bases for them during Plaintiff's deposition. On the other hand, I have reviewed the first deposition and I cannot accuse Defendant's counsel of conducting it as efficiently as I would hope. The first thirty-nine pages were spent on

16

Plaintiff's education, for example, and nearly the remainder of the deposition (except for a section devoted to Plaintiff's mental health condition and treatment) was a painstaking review of documents listed in Plaintiff's initial disclosure. Indeed, the deposition ended without any questions specifically directed to Plaintiff's allegations. But, I also have to appreciate that Plaintiff's production of those documents before the deposition might well have shortened the time the deposition took. Balancing these factors against each other, I will permit the deposition to continue for seven more hours.

### III.    CONCLUSION

For the reasons stated herein, Defendant's motion for a protective order will be granted, and Defendant's motion to compel Plaintiff's expert report, for Plaintiff to submit to mental examinations, and for additional time to depose Plaintiff will be granted in part and denied in part.

It will be further ordered that discovery in this case shall be extended 30 days from the date of this order to accommodate the outstanding issues described in this Memorandum Opinion. Pursuant to Judge Hogan's minute order of March 28, 2007, parties shall contact his chambers to schedule a status conference to take place following the completion of the outstanding discovery discussed herein.

An order accompanies this Memorandum Opinion.

                                                  _____/s/_____
                                                  JOHN M. FACCIOLA
                                                  UNITED STATES MAGISTRATE JUDGE

Dated:        May 10, 2007